FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

US DISTRICT COURT
HARTFORD CT

Pro se Prisoner Civil Rights Complaint

3CV1465SRU

Plaintiff:
Richard Reynolds                    : #219460

V                                   :

Defendants:                         : August 24th, 2013
Leo ARNONe - Commissioner CT D.o.C
Angel Quiros - Regional WARDEN NCI
Edward MALdoNado - WARDEN N.C.I
Gerard GANye - Psychiatrist N.C.I
MARK FRAYNe    psychologist N.C.I
John & JANe Doe's - CT. Dept of CoRR (will add in
                    discovery)
JASON Cahill - CAPtN At N.C.I

All defendants at all relevant times were acting
under color of state law And ARe being sued in their
official capacity And individual capacity

The Claims in this Action ARe being filed under
U.S.C 1983 And under The AmericaNs with Disability
Act.

Previous Lawsuit Related to this Case

A) Reynolds V. Murphy et Al # 3:13-cv-00316 SRU
B) Bridgeport District Court, Filed on 3/18/2013

Cont

c) Unlawful use of restraints, Prolonged use of restraints, indefinite placement on restraint status without due process, denial of equal protection, Collective punishment, General Retaliation, retaliatory treatment, Seizure of personal property.

D) Case still pending, Anticipate Joinder with this Action.

## Nature of Case

This case concerns the plaintiffs conditions of confinement that are ongoing and continue to cause psychological harm, Inadequate mental health treatment, denial of Religion, freedom of speech other confinement issues listed under Complaint With Jury Demand

This case Also falls under the American with disabilities Act. Plaintiff suffers from PTSD. And for 18 yrs at N.C.I he has been denied any program or treatment. This denial of Program/treatment compounded with 18+ yrs of solitary confinement has only led to his mental deterioration.

## Complaint With Jury Demand

1) This is a civil Rights Action filed by Richard Reynolds, a state prisoner, for damages And injunctive Relief under 42 U.S.C § 1983 Alleging denial of Due Process in violation of the Fourteenth Amendment to the Constitution And Confinement in segregation for 18yrs in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution. The plaintiff also alleges Denial of Equal Protection in violation of the Fourteenth Amendment to the Constitution. The plaintiff also alleges Collective Punishment which was outlawed by the Geneva Convention in 1949 Also in violation of the Fourteenth Amendment to the Constitution. The plaintiff Alleges Invidious Discrimination in violation of the Fourteenth Amendment to the Constitution. The plaintiff also alleges General Retaliation in violation of the Eighth Amendment to the Constitution And Retaliatory treatment in violation of the Eighth Amendment to the Constitution.

## Jurisdiction

2) The Court has jurisdiction over the plaintiffs claims of violation of federal constitutional Rights under 42 U.S.C. §§ 1331 in that this is a civil Action Arising under the Constitution of the United States

3) Jurisdiction of the Court is invoked pursuant to 42 U.S.C. §§ 1343 in that this Action seeks to redress the deprivation, under color of state law, of Rights secured by Acts of Congress providing for equal Rights of persons within the jurisdiction of the United States.

## Factual Statement

4) On March   1995 the plaintiff was moved from Hartford Correction Center to Northern Correctional Institute Super Max to begin a sentence of death.

5) Northern Correctional Institute will hereafter be referred to as NCI Supermax.

6) NCI Supermax houses, Administrative Segregation, Death Row, Security Risk Group (SRG), Special Needs and Chronic Discipline.

7) From its opening NCI Supermax was designed for punishment far above and beyond that of normal prison life (see Attachment A).

8) It's design was contributed to by a psychiatrist , not only to break and deter the inmates but to also drive a wedge between inmates and their family from visiting their loved ones.

9) Behavior modification at Northern consists of a manifold of several techniques: Dr Heims brainwashing methodology, Skinnerian Operand Conditioning, Dr. Heims sensory deprivation design (i.e, Control unit) drug therapy, along with several other techniques.

10) The plaintiff alleges these techniques, the way they are disguised behind pseudonyms and under philosophical rhetoric of correction and even their modus operandi, violate the Nuremberg Code, the United Nation's Standard of treat for offenders, the Department of Health Education

cont

And Welfare's policy on human experimentation and the 1st, 6th and 8th Amendments of the U.S. Constitution.

11) The plaintiff has no recourse to leave N.C.I's Supermax while under a sentence of death.

12) From 1995 to date plaintiff has been living in Administrative Segregation among inmates whom come an go back to general population.

13) Plaintiff now suffers from psychological and emotional problems due to the coming and going of other Administrative Segregated, special needs ect going back to general population or home.

14) Plaintiff has remained idle and confined to his small cell for 23 hours a day, day after day for 18 yrs.

15) Plaintiffs cell is entirely too small to confine any individual for so long a time, with only one hour departure.

16) The temperature in plaintiffs cell vary excessively, when its hot outside theres oppressive heat inside and when its cold outside the heats non existing inside.

17) In plaintiffs 18 yrs on death Row at N.C.I Supermax there has never been a fire drill.

18) Defendants largely ignore the emotional and physical well being of plaintiff.

Cont

19) Plaintiffs interaction with other human beings is not sufficient exasperating his P.T.S.D.

20) There are no educational or work programs available at N.C.I Supermax in violation of CT state law C.G.S. 18-10a

21) The plaintiff is not permitted access to dining Room.

22) The plaintiff has not been permitted access to use the Gymnasium in his 18 yrs at N.C.I Supermax.

23) The plaintiff exercise opportunities are minimal, once a week for 1 hr, wedvesdays rain snow sleet or shine outside, when gym equiptment is brought down.

24) The plaintiff went 12 straight yrs without tickets until defendants used/issued them as form of retaliation for another inmates behavioral problem. with Captin (see fact # ).

25) The plaintiff is being deprived access to clergy of his faith 7th day Adventist. (see Attment B Requests/Grievance)

26) The plaintiff is not allowed the opportunity for congregated religious services A punishment reserved for Administrative Segregation Status inmates. (see Att B)

27) The plaintiff is being denied full Access to Commissary items. Privileges lost without due process. Now plaintiffs restricted, A punishment reserved for Administrative Segregation Status inmates.

Cont

28) The plaintiff is being denied contact visits. Contact visits were allowed while death row was housed at Somers prison (now called Osbourne). A right lost when death row moved to N.C.I Supermax without any due process. While at Somers/Osbourne death row was housed under non-punative segregation. The move to N.C.I Supermax clearly changed that to punative segregation.

29) Plaintiff was sentenced to death, only. Not a sentence of death and psycological torment and solitary confinement.

30) The plaintiff alleges theres no issue whether placement in a punative Level 5 Supermax designed for punishment above and beyond normal prison life deprives him of his liberty interest, since the court can infer that the disciplinary rules themselves create a liberty interest; DOC prison rulebook says, in effect, "If you don't break these rules, we wont punish you." see Gilbert v. Frazier, 931 F.2d 1581, 1582 (7th Cir. 1991) Green v. Ferrell, 801 F.2d 765, 768-69 (5th Cir 1986) holding that punishment always implicates a liberty interest because the require of guilt is a substantive limit on official discretion.

31) The plaintiffs Segregation/Solitary confinement for a very long period of time will be found to be protected by due process under the constitution itself because of the psychological harm that can result from

Cont
prolonged isolated confinement.

32) The plaintiffs condition of confinement taken as
a whole imposes an atypical and significant hard-
ship within any correctional context.

33) The Supreme Courts recognition, that states can create
a protected liberty interest in freedom from restricted
confinement. The Supreme Courts decision in Sandin
makes clear that a prisoners restricted confine-
ment within a prison does not give rise to a liberty
interest, warranting procedural due process protec-
tion, unless the conditions and duration of the priso-
ners confinement imposes atypical and significant
hardship on the inmate in relation to the ordinary
incidents of prison life. The word "Atypical" describes
restricted confinement that imposes both Atypical
and significant hardship.

    Davenport V. De Robertis, 844 F.2d 1310, 1313,
    1316 (7th Cir 1988)
    "The record shows, what anyway seems pretty
    obvious, that isolating a human being from
    other human beings for years after year
    or even month after month can cause
    substantial psychological damage, even if the
    isolation is not total.

34) Plaintiff believes both conditions and duration
need be considered, since especially harsh endured
for a brief interval and somewhat harsh conditions
endured for a prolonged interval might both be

Cont
Atypical   Welch, 196 F.3d at 392-93

35) Solitary Confinement in normal SHU conditions for
365 days is beyond a sufficient departure from the
ordinary incidents of prison life to require proce-
dural due process protection under Sandin.
There is no percise calipers to measure the Se-
verity of plaintiff hardship, but the court should
believe that wherever the duration line is ulti-
mately drawn, Anything over 365 days satisfies
the standard.

36) The plaintiff has been incarcerated at N.C.I
Supermax in solitary confinement for over 18 yrs
from March 1995 to date.

37) The plaintiff accuses said defendants of deliberate
indifference, first by violation his right to be free
from excessive noise. The day room adjacent to cell
225-223 & 125-123 makes a constant droning noise
that comes from the vents/fire traps (not sure what its
called) 24/7 which created his insomnia depriving
him of sleep as well as drives plaintiff crazy.
This psychological torture due to the excessive noise
inflicts pain without penological justification in viola-
tion of plaintiffs 8th Amendment rights. (See Att. L)

38) The plaintiff accuses defendants of deliberate ind-
ifference, Second by ignoring their own Unit directive
for over 18 yrs (See Attachment C  Unit directives 9.4.1)
PG 20-21

Cont

39) The Plaintiff suffers from PTSD. It should shock the courts conscience to believe prisoners on death row housed in solitary confinement would not posess some mental illness and that 22 hrs a day confinement and lack of any real social inter-action wouldn't exacerbate that mental illness.

40) The plaintiff has witnessed one volunteer executio-n and numerous other death row inmates mental deterioration. Namely just recently August 13th 2013 at 2:30Am Sedrick Cobb cell #223. Im in 225 The man mentally snapped & had to be brought down to medical. He returned on the 14th (next day) And was out of his mind again on the 15th August 2013 And to date has not returned from MHU mental health Unit. And this was the third break down I witnessed.

41) The defendants violated published professional standards of care or the prisons own procedures for medical care their own standards/procedures provide circumstantial evidence that the prison health care gate keepers defendants Gerrard Granye, Mark Frank, John & Jane Doe's (Names to be added in discovery) knew of a substantial risk of serious harm to those incarcerated at N.C.I Level 5 Super Max for long periods of time. (see attachment C )

42) The plaintiff alleges the defendants failed to follow professional standards as well as prison medical care protocols clearly demonstrating deliberate indiffere-nce. Their own standards and protocol are evidence

Cont

of the defendants/practioners Knowledge of the
risk posed by particular symptons or conditions
    Unit Directives 9.4.1 pg 20-21 Restrictive/
    Death Row status Review (D)
    "When AN inmate remains on Restrictive housing
    beyond 30 days, A psychologist or psychiatrist
    shall conduct a personal interview with the
    inmate And document the inmates mental
    status in the inmates health record. If confi-
    nement continues for AN extended period of
    time, the Aforementioned psychological Assessm-
    ent shall be made every three (3) months or
    As clinically Necessary ect.

43) Plaintiff sites FARMER v. BRENNAN, 511 U.S. At 845
    "You can Sue under the 8th Amendment for
    harm that is not "impending"; Farmer said
    that serious damage to prisoners future
    health is actionable.
    The harm does not have to be "easily preven-
    table"; Farmer holds that prison officials must
    do what is reasonable, Not what is easy.

44) The plaintiff has been incarcerated for over 18 yrs
    on N.C.I death Row Solitary confinement and has
    Never, Not once, been seen my any mental health
    staff other than them passing by his cell door
    if they were to see me outside of the prison
    they wouldn't Know who I was.

Cont

45) In this case the plaintiff believes the focus should be on the institutions historical indifference rather than the state of Knowledge and the response (or lack their of) a particular individual.

46) The plaintiff alleges over the past 18 yrs Numerous Administrations have demonstrated a clear WANTON And reckless disregard of plaintiffs rights, physical And mental deterioration And psychological damage years of solitary confinement would inflect on plaintiff.

47) Plaintiffs conditions of confinement created an Adverse Action, "A decision or event that unfavorably effects a person, entity, or association."
　　　Judge Posner in Bart V. Telford 677 F.2d 622,625 (7th Cir. 1982) That an Adverse Action is one that would "deter a person of ordinary firmness" from the exercise of the right At stake.

48) Plaintiff alleges Numerous defendants Kept stringing him along into believing that they were looking into making changes for the better while actually only buying time until the next defendants/Administrator took over. In which plaintiff would have to start building a New relationship with the New Administration see Attachment D) demonstrating years of trying to better my conditions.

Cont

49) Plaintiff alleges that stringing him along was the Adverse action that kept him from pursuing Any legal action as well as the retaliation and collective punishment suffered by the plaintiff over the years created an adverse action.

50) On feburary 22nd 1997 Death Row started group work assignment

51) On May 14th 1997 Death Row started group recreation.

52) On or about May 14th 1997 death Row started group meals in Adjacent day room for lunch and dinner.

53) On November 1st 1998 inmate Michael Ross attempted suicide in his cell, alone on 3rd shift sometime after 11:00pm. The next day all group activities stopped.

54) On November 10th 1998 Warden Gomez told plaintiff (during his tour of facility) that, "things will go back to Normal soon".

55) On November 18th 1998 plaintiff was informed by Major Krajiniak that were losing our group rec and that we can thank Ross for that.

56) On December 8th 1998 Group rec was split into 2 groups of 3 due to Ross's suicide Attempt. A clear showing of collective punishment.

cont

57) On December 9th 1998 plaintiff again spoke to Warden during his tour of facility and was told by Warden Gomez and Major McDonald to, "wait for 6 months till things go back to Normal the political climate will be better (due to Ross's suicide attempt).

58) On Feburary 1st 1999 approximately 2 months after conversing with then Warden ~~that~~ Gomez and Major McDonald a New Warden took over Warden Larry Myers

59) On Feburary 7th 1999 Inmate Daniel Webb was accused by Warden Larry Myers and Commissioner John J. Armstrong of plotting an escape. Inmate allegedly gave a letter to his lawyer.

60) On March 11th 1999 plaintiff spoke to Major Thomas Coates and Major Michael Lajoie and was assured, "were Not losing anything due to inmate Webb's Actions.

61) Within a week of said conversation with both majors death row was stripped of its group dining group rec in both the rec yard and day room and group work assignment. Clearly collective punishment and No due process.

62) From 1999 to date plaintiff continues to be treated as an punitive segregative inmate in solitary confinement

Cont
Cont

63) Plaintiff has no means of being able to gain release from these conditions. Even with exemplary behavior his condition of confinement wont change short of judicial intervention.
Even though defendant Maldonado states in a letter to Jennifer L. Bourn Assistant Public Defender for inmate Steven Hayes # 97425 And I quote "Northern C.I. provides a highly structured, secure and humane enviorment while affording inmates an opportunity through positive behavior to attain the same privileges as those inmates in less restrictive facilities".
(See attachment E)

64) Plaintiff was ticket free from 1999 to 2010 and nothing changed for him and other have and are ticket free even to date.

65) N.C.I was built purely for punative reasons to house Security Risk Group (SRG), Special Needs, Chronic Discipline and Administrative Segregation inmates whom have violate or broken one or more of Connecticuts D.O.C Rules, policy directives or protocol in one form or another to justify their placement in this Level 5 Supermax.
Said inmates are then given due process hearing to prove if their placement is justified and if its so they then have the opportunity through positive behavior to be returned to general population within one calender year.

Cont

66) The guidlines for N.C.I is for inmates to spent one (1) year in solitary confinement in which they work their way out with privileges are returned during the course of that year.

67) Plaintiff believes that the psychological effects of isolation and sensory deprivation in N.C.I Supermax Control unit is far riskier on his and other's sanity than normal prison life.

The U.S. Supreme court states in <u>Hewitt v. Helms at 459 U.S. 477, Note 9</u>, "Of course Administrative Segregation may <u>Not</u> be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of inmates in Administrative Seg." Sostre v. McGinniss 312 F.supp 863, People who are confined in these conditions are at risks for developing serious psychological problem.

68) On only needs to see whats been going on in California's Supermax (recently on ABC News) to understand why plaintiff's have been complaining about his conditions of confinement for 18 years by writing numerous letters to warden (s) since 1995. All claim to look into it to no avail See Att D    & theres still many more.

cont

69) The Equal Protection of the 14th Amendment provision requiring the states to give similary situated persons or classes similar treatment under the law. The 14th Amendment guarantees that the goverment must treat a person or class of person's the same as it treats other persons or classes in like circumstances.

70) The plaintiff believes that means inmates on death row are not housed at N.C.I Supermax for any D.O.C violations should be treated as any other level 4 inmates within Connecticut D.O.C which is how death row were treated prior to its removal from Somers prison (now called Osbourne)

71) Were here only because its the commissioners choice which leads the plaintiff to believe a Ex post facto law has been violated. Plaintiff was arrested in 1992, Death row was housed in Somers prison, segregated but non puwative segregation with all of level 4 privileges. By 1995 death Row was moved and stripped of their rights and privileges affored and Liberty interest in violation of his due process clause 5th Amendment and 14th Amendment rights.

72) The plaintiff alleges that from 1995 to date due to being housed at N.C.I Supermax he's suffered invidious discrimination, retaliation, collective punishment, due process violations, deliberate

cont
indifference, Loss of liberty interest, cruel and
unusual punishment, mental deterioration, and retal-
ptory measures. Due to his placement in a prison
designed for extreme punishment far and above
that of normal prison life.

73) On March 29th 2010 an alltercation between Captn
Cahill (defendant) and inmate Daniel Webb occured.

74) Said alltercation led to a lockdown followed by a
shakedown of plaintiff and other death row inmates
The shakedown was spearheaded by non other than
the defendant Captn Cahill.

75) Said shake down resulted in plaintiff losing numer
ous property. Plaintiff alleges property was taken
solely for retaliation stemming from alltercation
with defendant Captn Cahill and inmate Daniel
Webb in violation of plaintiffs 5th Amendment
rights.
When inmates are afforded the opportunity to
posess posess property they enjoy a protected liberty
interest in that property that cannot be infringed
without due process. All plaintiffs property that
was removed was commissary purchased procured
throughout his then 15 yrs at N.C.I.

Cont

76) Plaintiff had Nothing "at all" to do with said incident.

77) After the lockdown/shakedown was over, plaintiff along with other death Row inmates were put on Indefinite restraints. Collective punishment outlawed by The Geneva Convention. 14th Amendment violation.

78) On April 30th 2010 plaintiff filed two grievance in accordance with Connecticuts D.O.C Directives. One for Retalitory measures/Retaliction and One for the Return of Confiscated property purchase via Commissary at N.C.I. SuperMAX. Also filed A CN 9601 Inmate Request form asking then Warden Angel Quiros (defendant) to explain what possible reason were magazines taken other than retaliation by then Captn Cahill (defendant) (see Attachments F)

79) On May 3rd 2010 both grievances were denied

80) My inmate Request form CN 9601 for missing magazines were being looked Into (see Attachment G)

81) On May 21st 2010 I filed my level 2 grievences for Retalitory measures/retaliation and restraints, and the other for confiscated/taken property.

82) On June 1st 2010 my grievance on my taken property was denied (see Attachment F)

83) One June 2nd 2012 my grievance for Retaliation & Restraints was denied. (see Attachment F)

Cont

84) Both grievances have been exhausted by plaintiff in accordance with Connecticuts D.O.C. policy and Directives with No Relief (see Attachments F)

85) From March 29th 2010 to date plaintiff has had No hearing or anything close to explaining why plaintiff is on Restraint status or why his personal property was taken. No due process.

86) The plaintiff has been ticket free for the 12 yrs prior to the incidents shakedown/lockdown.

87) Plaintiff received a ticket for having antenna wire (old head phone wire) in which he's had from before being brought to N.C.I Supermax.

88) Plaintiffs wire was made of copper which stopped being used in the mid 90's when everything went to fiber optics.

89) Plaintiff had said wire for over 10 yrs and never received any tickets for it during numerous shakedown

90) Plaintiff alleges all property, use of restraants, loss of in cell plastic chair, numerous magazines, all stem from Retaliation/Retaliatory measures/General retaliation followed by collective punishment. All put in play by then warden Quiros (defendant) dep warden Faucher (defendant) dep warden Powers (defendant) and Captn Cahill (defendant).

91) The plaintiff over the past 15yrs has had his rights and privelages stripped from what was once afforded him

<u>Cont</u>
And thats still afforded to all other Level y inmates.

92) The plaintiff alleges that that constitutes cruel an unusual punishment.

93) Plaintiff Alleges continued isolation in Administrative Segregation for 18 yrs is cruel and unusual punishment.

94) Plaintiff Alleges solitary confinement for 18+ years is cruel and unusual punishment.

95) The plaintiff alleges placing death row inmates in a Level 5 Supermax designed for puwative measures above and beyond that of normal prison life with no means of coming off of Administrative Segregation constitutes cruel and unusual punishment.

96) The plaintiff Alleges that the placing of anyone on Administrative Segregation indefintely in any Level 5 Super-max would cause irreparable mental and psychological damage and would definitely constitute cruel and unusual punishment.

97) The plaintiff alleges that the "State Agency Defendants" owes plaintiff $2,880 back pay (and counting) from 2001 till. N.C.I. Supermax Unit Directives 9.4.1 #3.D pg 9 of 24 D. Work Assignments: "The Rate of pay "Shall" be set at work Level 2 in Accordance with Administrative Directive 10.1 Inmate Assignment and pay plan." (see Attachment C pg 9) Directive 9.4.1 (see Att H Directives 10.1 pg 6)

<u>Cont</u>

98) Plaintiff alleges that from 2001 (exact date unknown) "State Agency Defendants removed him from Level 2 pay to Level 3 without any Notice or any due process.

99) Plaintiff was paid $1.^{05} A day x 7 = $8.^{75} A week x 4 weeks = $35^{00} A month x 12 months = $420^{00} A year for the first six years 1995 to 2001.

100) Plaintiff has been paid $15^{00} A month x 12 months = $180^{00} A year for the past 12 years. 2001 to date.

101) In the past 12 years plaintiff would have made $5,040^{00} instead he's earned $2,160^{00} A difference of $2,880^{00}

102) The plaintiff states the "State Agency Defendants" owe him $2,880 for 12 years back pay in Accordance with 9.4.1 Unit Directives work assignment and Administrative Directive 10.1 Inmate Assignment and pay plan. (see attment C&D)

103) For 18 yrs under these conditions of confinement, the plaintiff believes this should shock the conscience of everyone.

104) The plaintiff alleges for 18 yrs he's been denied to participate in Connecticuts D.O.C picture program. The program is not used at N.C.I's Supermax for punative reasons. The plaintiff is not housed at N.C.I Supermax for the punative reasons that others are sent here.

Cont

105) Plaintiff Alleges his job was taken steming from the March 29th 2010 Altercation between inmate Daviel Webb and defendant Captn Cahill

A State created liberty interest per Connecticut State Law C.G.S 18-10a

When asserting a due process right that is premised on a state created Liberty interest, the prisoner must establish that the state laws in fact create such a liberty interest.

106) The plaintiffs lack of access to the all commissary items creates atypical and significant hardship in relation to ordinary incidents of prison life. We cannot purchase hygenic items such as hair grease (im African American) Pompade, Pink moisturizing hair oil, dental floss sticks, Doo Rag, hair brush ect. It would be one thing to have to do without said items for 1 year, but indefinitely is absurd

## Remedy Exhaustion

107) Attached here to is documentation (Inmate Grievance form Level 1 and 2) to demonstrate plaintiffs compliance with exhaustion rule as articulated in RICHARDSON v. COMMISSIONER, ET AL, 87 Conn. App. 46; 863 A.2d 754 (2005)

<u>Claim for Relief</u>
<u>Conditions of confinement 8th Amendment Rights</u>

The actions of defendants #1 John J. Armstrong commissioner, #2 Mays (warden) #3 John Doe (major) #4 John Doe (major) #5 John Doe (captn) #6 Robert Kupec (warden) #7 John Doe (major) #8 John Doe (major) #9 John Doe (captn) #10 Donzagni (warden) #11 John Doe (major) #12 John Doe (major) #13 John Doe (captn) #14 Giovanny Gomez (warden) #15 Lori Krajniak (major) #16 Paul Bradnan (major) #17 John Doe (major) #18 John Doe (captn) #19 Larry Myers (warden) #20 Thomas Coates (major) #21 Christine Whidden (major) #22 Michael Lajoie (major) #23 John Doe (captn) #24 Theresa Lantz (commissioner) #25 Choinsky (warden) #26 Jeffrey McGill (dep warden) #27 Rodriguez (dep warden) #28 Lyte (or Light) (dep warden) #29 Salius (captn) #30 Angel Quiros (warden) #31 Faucher (dep warden) #32 L. Powers (dep warden) #33 Jason Cahill (captn) #34 Leo. Arnone (commissioner) #35 Edward Maldonado (warden) #36 Cyr (dep warden) #37 Mulligan (dep warden) #38 Rae (captn)., from 1995 to date have shown a deliberate indifference to plaintiff s well being. A violation of plaintiffs 8th Amendment Right.

A) The Defendants identified in paragraph above will hereafter be referred to as the "State Agency Defendants."

B) The actions of the "State Agency Defendants" created conditions of confinement for 18 yrs that constitutes cruel and unusual punishment in violation of plaintiffs 8th Amendment Rights.

C) As a result of the "State Agency Defendants" wanton reckless disregard of plaintiff an his rights over the past 18 yrs he has suffered due to his conditions of confinement

<u>Cont</u>

from the Isolation, lack of mental health care, causing irreparable mental and psychological damage from "State Agency Defendants" cruel and unusual punishment. 8th

## Claim for Relief
### Equal Protection 14th Amendment Rights

A) The failure of "State Agency Defendants" to provide plaintiff with a 7th day Adventist Clergy is in violation of his 1st, and 14th Amendment Right

B) The failure of "State Agency Defendants" to provide plaintiff his equal protection of the law by denying him congregated religious services in violation of his 1st and 14th Amendment Rights.

C) The plaintiff has been diagnosed with P.T.S.D.

D) The "State Agency Defendants" actions has led the plaintiff psychological and emotional problems due to being isolated idle and confined for 23 hours a day for 18 yrs. Which creates atypical and significant hardship on said plaintiff in relation to the ordinary incidents of prison life.

E) The "State Agency Defendants" failure to comply with the Equal protection clause of the 14th Amendment. Clearly demonstrates Invidious discrimination and retaliatory treatment.

F) Actions of "State Agency Defendants" taking away plaintiffs personal property without a hearing, due to anothers

cont

inmates actions falls under General Retaliation and collective punishment in violation of plaintiffs 5th, 8th and 14th Amendment rights.

G) The "State Agency Defendants" futher use of retaliation was placing plaintiff on indefinite restraints status (from March 2010 to date) without a hearing only demonstrates their Retalitory treatment in violation of his 5th, 8th and 14th Amendment Rights. Creating deliberate indifference, malicious and sadistic intent, deprivation of his rights of bodily liberty, and atypical and significant hardship.

H) The failure of "State Agency Defendants" to stop their invidious discrimination of plaintiff due to his being on death row by treating him as a Administrative segregation inmate when hes violated no D.O.C Rules directives or policy to be placed on indefinite Administrative segration status.

I) The Actions of "State Agency Defendants" removal of group rec, group socialization and group dining due to the actions of another falls under collective punishment. Which is outlawed by the Geneva Convention and a violation of plaintiff Equal protection rights a clear violation of his 8th and 14th Amendment Rights.

Claim of Relief
Due Process   14th Amendment Rights

A) The "State Agency Defendants" action over 18 yrs created a deprivation of the plaintiffs Liberty interest.

cont

B) The Actions of the "State Agency Defendants" in keeping plaintiff on indefinite Administrative Segregation subjected him to Atypical and significant hardship for 18 yrs which constitutes cruel And unusual punishment is in violation of his 8th And 14th Amendment Rights

C) The "State Agency Defendants" failure to give plaintiff a Administrative Segregation hearing in his 18 yrs at N.C.I Supermax is in violation of his due process 14th Amendment Rights.

D) The "State Agency Defendants" denied plaintiff his due process rights afforded him by not establishing why "his" group rec And group dining was terminated. From March 1995 to date No hearing. What did plaintiff do for "State Agency Defendants" to justify their violating my 14th Amendment Rights.

E) "State Agency Defendants" failure to give plaintiff a hearing from March 2010 to date before placement on restraint status violating my due process Rights 14th Amendment.

F) "State Agency Defendants" further deprive plaintiff of any means of coming off of Administrative Segregation status. In violation of plaintiffs due process and Equal Protection 8th And 14th Amendment Rights.

G) The failure of "State Agency Defendants" to follow their own Administrative directive unit policy 9.4.1 #16 D Restrictive/Death Row status review Health Assessment. Their suppose to see if my conditions Are contraindicated if inmates remain on restrictive housing status beyond 30 days

Cont

(see Attachment C pg 20-21) I've been on death Row Redirective
housing Now for 18 yrs And I've Never been pulled out for any
mental health Review.

H) The failure of "State Agency Defendants" to follow their own
Administrative Directives 10.1 And Administrative Directives
Unit Policy 9.4.1 #3.D pg 9of24 Work Assignments: "The rate of
pay "Shall" be set at work Level 2, IN ACCORDANCE with Admini-
strative Directive 10.1, Inmate Assignment and pay plan. (see
Attachment C pg 9-D) (see Att H pg 6)

### Retaliation / Collective Punishment

A) As a result of "State Agency Defendants" #1, John J. Armstr-
ong (commissioner), #14 Giovanny Gomez (warden), #15 Lori Kra-
jniak (dep warden) (major), #16 Paul Bradnan (dep warden) (major), #17 Mcdonald
(dep warden) (major) #18 John Doe (captn) plaintiff lost his group Rec
due to someone else's Actions. Michael Ross suicide Attempt

B) As a result of "State Agency Defendants" #1 John J. Armstr-
ong (commissioner), #14 Giovanni Gomez (warden) #15 Lori Kra-
jniak (major) #16 Paul Bradnan (major), #17 Mcdonald (major),
#18 John Doe (captn) plaintiff lost his group meals in day
room due to someone else's Actions. (Same As Above

C) As a result of "State Agency Defendants" #1 John J. Arms
trong (Commissioner) #19 Larry Myers (warden), #20 Thomas Coates
(major), #21 Christine Whidden (major), #22 Michael Lajoie (major),
#23 Rodriguez (captn), plaintiff lost the Rest of their rec. It
went from all to half And half. Now its one man Rec, due
to someone else's Actions. Daniel Webb's escape plot.

Cont

D) As a result of "State Agency Defendants" #1 John J. Armstrong (Commissioner) #19 Larry Myers (warden), #20 Thomas Coates (major), #21 Christine Whidden (major), #22 Michael Lajoie (major), #23 Rodriguez (captn) plaintiff lost the rest of his group meals (three then three), due to someone else's action (same as above

E) As a result of "State Agency Defendants" #1 John J. Armstrong (Commissioner) #19 Larry Myers (warden) #20 Thomas Coates (major), #21 Christine Whidden (major) #22 Michael Lajoie (major), #23 Rodriguez (captn) plaintiff lost group work assignments.

F) As a result of "State Agency Defendants" #24 Theresa Lantz (Commissioner), #25 Wayne Choinsky (warden) #26 Jeffrey McG r// (dep warden), #27 Rodriguez (dep warden), #28 Lyte (dep warden) #29 Salius (captn) plaintiff lost full access to commissary items due to someone else's actions.

G) As a result of "State Agency Defendants" #24 Theresa Lantz (Commissioner), #30 Angel Quiros (warden), #31 Faucher (dep warden) #32 L. Powers (dep warden), #33 Jason Cahill (captn) Plaintiff lost numerous property, in cell plastic chair, magazines and placed on indefinite restraint status without any hearing. due to another's actions. The taking of plaintiffs personal property served no penological interest to safety and security. Just retaliation and collective punishment.

H) As a result of "State Agency Defendant commissioner John J. Armstrong moving death row from Somers to N.C.I Level 5 Supermax violated the ex-post facto law and changed the nature of my sentence from a sentence of death, to solitary confinement

Cont
, psychological torture, invidious discrimination,
Collective punishment, deliberate indifference,
Loss of liberty, interest, mental deterioration
retaliatory treatment, cruel and unusual punish-
ment and the original sentence of death.

Relief Requested

WHEREFORE, plaintiff request that the court grant the following

A. Issue a declaratory judgement stating that:

1- "State Agency Defendants" Knowingly violated the plaintiffs rights and continued to violate the plaintiffs Rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

2- "State Agency Defendants" Knowingly violated the plaintiffs rights by subjecting him to Collective Punishment (thats been outlawed by the Geneva Convention in 1949) in violation of the Fourteenth Amendment to the United States Constitution.

3- "State Agency Defendants" Knowingly violated the plaintiffs rights by subjecting plaintiff to Invidious Discrimination in violation of the Fourteenth Amendment to the United States Constitution.

4- "State Agency Defendants" Knowingly violated the plaintiffs rights by depriving him of Equal Protection under the Fourteenth Amendment to the United States Constitution.

5- "State Agency Defendants" Knowingly violated the plaintiffs rights by subjecting him to General Retaliation in violation of the Eighth Amendment to the United States Constitution.

6- "State Agency Defendants" Knowingly violated the plaintiffs rights by subjecting him to Retaliatory Treatment in violation of the Eighth Amendment to the United States Constitution.

Cont

7- "State Agency Defendants" Knowingly violated the plaintiffs rights and continued to violate the plaintiffs rights for 18 yrs with cruel and unusual Conditions of Confinement in Violation of the Eighth Amendment to the United States Constitution.

B. Issue an injunction ordering "State Agency Defendants" to:

1- Release the plaintiff from punative/Administrative Segregation and place him on general population "status", with restoration of all rights and privelages immediately.

2- Restore plaintiffs pay to Level 2.

3- Return all back wages to plaintiff earned from 2001 to date. approx $2,880 to date.

4- Provide 7th day Adventist Clergy and allow group Religious services.

5- Return all plaintiffs personal property.

6- Return group Rec and meals in day Room adjacent to death Row (Out of cell time in day Room).

7- Remove plaintiff from restraint status.

8- Order Mental Health Unit (MHU) to comply with N.C.I Unit Directives 9.4.1 Health Assessment (see attachment

9- Provide access to N.C.I's gymnasium

Cont

10- return plaintiffs job out of cell.

11- Unrestricted commissary privileges like Level
      4 as plaintiff once had.

12- Contact family and friends visit. Like death
      row had while at Somers facility.

13- Stop the collective punishment at N.C.I's
      SuperMax.

14- The return of in cell plastic chair. As I
      use to retain in which inmate Bob Breirton
      still has.

15- Provide a picture program at N.C.I for plain-
      tiff and other's not here for punative sanction

16- Removed from 23 hr a day confinement

17- Return group rec outside in Rec yard

18- Stop the discrimination against plaintiff &
      other death row inmate.

19- Stop the retaliation against plaintiff for other
      s behavioral problems.

20- Anything short of this, this plaintiff contends
      that his continued confinement at N.C.I Sup
      ermax and associated existing on him would

cout

Continue to
A) Deprive him of his liberty interest without due process of law.
B) Subject him to cruel and unusual punishment.
C) Deny him equal protection of law.
D) Deny his freedom of speech and religion
E) Cause him to suffer psychological damage
F) Exacerbate his known mental illness

2$- If relief cannot be met due to N.C.I directives, protocols, ect, then removal of death row to another institution that can accomodate Level 4 guidelines would be ~~appropriate~~. Appropriate.

C Award Compensatory damages in the following amounts
1- Any and all relief that this honourable court deems just proper and equitable

D Award punative damages in the following amounts:
1- Any and all financial relief that this honourable court deems just for 18 yrs thats proper and equitable

E A jury trial on all issues triable by jury.

F Plaintiffs cost in this court.

G Any and all additional relief that this honourable court deems just, proper and equitable.

Cont

Richard Reynolds

Respectfully submitted

Richard Reynolds #219460
Northern Corr Inst
287 Bilton Road
Somers, CT 06071

## VERIFICATION

cont

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Northern Corr Inst.
287 Bilton Road,
P.O. Box 665
Somers, CT 06071
on this 24th of August of 2013

Richard Reynolds
#219460