UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD REYNOLDS, : | |
|     Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:13-cv-1465 (SRU) |
| : | |
| LEO ARNONE, et al., : | |
|     Defendants. : | |

RULING ON MOTION TO COMPEL

The plaintiff, Richard Reynolds, seeks to compel the defendants to respond to his requests for production of documents. For the reasons that follow, the plaintiff's motion is denied in substantial part.

Reynolds was sentenced to death in April 1995. Since then, he has been confined on death row at Northern Correctional Institution. In his amended complaint, Reynolds challenges his conditions of confinement on death row. Reynolds contends that his conditions of confinement violate the Eighth Amendment prohibition against cruel and unusual punishment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Ex Post Facto Clause. The specific conditions he challenges include confinement in his cell for 23 hours per day since 1995, uncomfortable temperatures, lack of educational or work programs, lack of communal dining, no access to the gymnasium, limited exercise opportunities, no communal religious services or access to clergy of his faith, only limited access to the commissary, no contact visits, inability to participate in the picture program, a reduction in prison pay and inadequate mental health care. *See* Initial Review Order re Amended Complaint, Doc. #11 at 2. This is not a class action.

Parties in civil litigation are entitled to obtain discovery on non-privileged matters that are relevant to a claim in the pending case. The material need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Although the standard is broad, it is not without limits. The district court has discretion to determine whether requested discovery materials could be relevant. *See Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn. 1998).

> Request 1: "Any and all past complaints pertaining to conditions of confinement at N.C.I. to date"

The defendants object to this request as overbroad and unduly burdensome. They note that complaints are not recorded by issue. Northern Correctional Institution has been in existence for nearly twenty years. During that time, thousands of inmates were confined there and all of them could have submitted complaints. The defendants would have to sort through thousands of documents to locate complaints responsive to Reynolds' request. Further, Northern Correctional Institution housed many more inmates than those on death row. This action challenges only the conditions of confinement to which Reynolds was subjected. Claims regarding conditions of confinement by inmates not on death row are unrelated to the claims in this case. Reynolds' motion to compel is denied as to Request 1, except that the defendants shall produce complaints about conditions of confinement made by death row inmates during the last five years.

> Request 2: "Any and all complaints filed, state or federal civil cases pertaining to conditions of confinement at Northern Corr Inst from 1995 to the date of your response."

As with Request 1, this request is overbroad and unduly burdensome. Hundreds of cases could have been filed in the twenty-year period covered by the request. Cases filed by persons

2

not on death row would not necessarily involve the same conditions to which Reynolds was subjected. The motion to compel is denied as to Request 2, except that the defendants shall produce complaints about conditions of confinement made by death row inmates during the last five years.

> Request 3: "Any and all policies, procedures, regulations, instructions, notes, memoranda, internal communications and directives in effect from March 1995 through and including the date of your response to this request concerning death row and its treatment at N.C.I"

The defendants correctly contend that information concerning conditions on death row twenty years ago are not relevant to the question whether Reynolds' current conditions are unconstitutional. The defendants also contend that many documents included within the request could implicate institutional safety and security. They have offered to consider a request for specific documents relating to the allegations in the amended complaint. In light of this response, the motion to compel is denied with respect to Request 3.

> Request 4: "Any and all policies, procedures, regulations, instructions, notes, memoranda, internal communications, media interviews generated by Commissioner Armstrong pertaining to moving death row from Somers prison to the newly built Supermax Level 5 facility and why. Before and after the move."
>
> Request 5: "Any and all policies, procedures, regulations, instructions, notes, memoranda, internal communications, directives, unit directives in effect from 1984 when Michael Ross was sentenced to death through 1995 when death row was moved to the newly built Supermax Level 5 facility."
>
> Request 6: "Any and all daily activity sheets, post orders, jobs title and pay rate, visits how many per week and length, picture program, daily rec, out of cell time for death row from 1984 at Somers prison to date of move to the newly built Supermax Level 5 facility."

The defendants object collectively to Requests 4-6. They note that Reynolds does not

3

allege that he was confined on death row when it was located at another correctional facility. Information regarding death row prior to the move and information concerning the move is unrelated to the conditions under which Reynolds now is confined. Thus, Requests 4-6 are not reasonably calculated to lead to the discovery of admissible evidence. The motion to compel is denied with respect to Requests 4-6.

>   Request 7: "Any and all inclusion or revision to administrative Directive 9.2 made by any D.O.C. employee, notes internal communications pertaining to death row being added to A/D. I believe its on or around 1996"

The defendants state that they will provide Reynolds with all earlier versions of Directive 9.2 that can be located. Reynolds indicates that the change he seeks information about occurred in 1996. The Court cannot discern how any communications leading to the revision of the directive nearly twenty years ago would affect a determination whether Reynolds' current conditions of confinement are unconstitutional.

Reynolds states that he wishes to add to this complaint any persons who authored the communications in 1996. The limitations period for filing a section 1983 action is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Under federal law, a cause of action accrues when a plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). Reynolds has been aware that death row was moved to Northern Correctional Institution since his confinement there in 1995 and could have looked at the directives at any time thereafter. Thus, any claim against unknown persons that resulted in a change in the directive in 1996 would be time-barred. The motion to compel is denied with respect to Request 7.

>   Request 8: "Any and all inclusion and revision to Administrative Directive 3.8 made

>by any D.O.C. employee notes, internal communications restricting (access to) death row to specific commissary items.  Hair grease (basic needs) etc."

The defendants state that they will provide Reynolds with all earlier versions of Directive 3.8.  The issue relating to this directive is whether restricting access to some commissary items is constitutional.  The relevant evidence would be the directive.  Communications leading to a revision of the directive would not lead to the discovery of admissible evidence.  Reynolds' motion to compel is denied with respect to Request 8.

>Request 9:    "Any and all policies, procedures, regulations, instruction, notes, memoranda, internal communications, directives, unit directives, jobs; pay rate visiting length, picture program use of gym & length of time daily activity sheet for Protective Custody at Cheshire CI and handbooks."

Reynolds claims that this information is required to support his equal protection claim.  He argues that persons confined in protective custody are similarly situated because protective custody and death row are both classified as non-punitive administrative segregation.  Reynolds is mistaken.

To state an equal protection claim, Reynolds must allege facts showing that he was treated differently from other similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted).  Reynolds bases his claim on the fact that he is confined on death row.  Thus, he has not satisfied the second requirement.

Reynolds also can bring an equal protection claim on a "class of one" theory.  To state a

valid equal protection "class of one" claim, Reynolds must allege, first, that he has been intentionally treated differently from others who are similarly situated and, second, that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Reynolds must allege an "extremely high level of similarity with the person to whom his is comparing himself. *Neilson v. D'Angelis*, 408 F.3d 100, 104 (2d Cir. 2005). Reynolds' circumstances and the other inmate's must be "prima facie identical." *Id.* at 105.

Although both protective custody and death row may be classified as non-punitive administrative segregation, Reynolds is not similarly situated with inmates in protective custody. Inmates are confined in protective custody when they are at risk of serious harm from other inmates. *See* Department of Correction Administrative Directive 9.9(9), www.ct.gov/doc (last visited Feb. 5, 2015). Reynolds is confined on death row as a result of being sentenced to the death penalty. Because he is not similarly situated to inmates in protective custody, the information requested is not relevant to the claims in the amended complaint. The motion to compel is denied with respect to Request 9.

> Request 10:  "Any and all pay rate for death row inmates Bob Breton, Todd Rizzo, Eduardo Santiago D.O.C. employment, from 2005 to day of your response to this request."

The defendants object on the ground that this request is overbroad and not calculated to lead to the discovery of admissible evidence. They also state that disclosure of the information could jeopardize institutional safety and security. Another court has held that information on other inmates' pay is confidential. *See King v. Ditter*, No. 06-C0257-C, 2005 WL 6186516, at *2 (W.D. Wis. Oct. 20, 2005) (denying motion to compel production of confidential inmate pay sheets).

6

Reynolds states that this information is necessary to support his equal protection claim. He contends that inmate Breton continued to receive Level 2 pay after he lost his prison job, but Reynolds, who did not have a job, was paid at Level 1. The defendants shall acknowledge whether or not inmate Breton continued to receive a higher rate of pay after he lost his prison job. In all other respects, the motion to compel is denied with respect to Request 10 on the grounds that the request is overbroad.

> Request 11: "For #7 and 8 plaintiff requests forms CN1301, 1302, 1303, 1304, 1305, 1306, pertaining to A/D 9.2, 3.8"

In this request, Reynolds supplements earlier requests. The defendants have responded that these documents will be provided to the plaintiff. Accordingly, the motion to compel a response is to Request 11 is denied as moot.

> Request 12: "Any and all instructions, notes internal communications made by the Office of Protection and Advocacy for Persons with Disabilities (OPA) and Attorney General Richard Blumenthal, Assistant Attorney Generals, Terrence M. O'Neill Ann E. Lynch, Steven R. Strom, defendants and plaintiffs in the March 8th 2004 Settlement Agreement OPA v. Choinski NO 3:03-CV-1352(RNC)"

The defendants object to production of any documents created by attorneys in the Office of the Attorney General as attorney work product that is exempt from disclosure. Reynolds asks the Court to determine whether any of these documents were disclosed in connection with the Connecticut legislature's review of the settlement agreement and, if so, to order disclosure of the same documents to him. The Court cannot act as Reynolds' advocate. Because he provides only conjecture to overcome the exemption, the motion to compel these documents is denied.

To the extent that Reynolds seeks documents created by persons employed by the Office of Protection and Advocacy, those documents do not appear to be reasonably calculated to lead

7

to the discovery of admissible evidence.  The motion to compel is denied with respect to Request 12.

>  Request 13:  "Any and all policies, regulations instructions notes, memorandas, internal communications, "proposals" generated and given (by any state employee or hired by Connecticut state) to the town of Somers for its reasons/decisions to build a Level 5 Supermax facility"
>
>  Request 14:  "Any and all notes, memorandas, internal communications, transcripts generated before during and after any town meetings pertaining to the states desire to build a Level 5 Supermax facility and why it wants/needs to build a Level 5 Supermax facility."
>
>  Request 15:  "Any and all notes memoranda, internal communication instructions, proposals, procedures generated by any State official, D.O.C. Employee ect pertaining to solitary confinement/isolation being part of Northern's construction of said Level 5 facility."

The defendants object collectively to Requests 13-15.  All three requests concern events relating to the construction of Northern Correctional Institution over twenty years ago.  Information concerning construction of the facility is not relevant to the conditions that Reynolds is currently experiencing on death row.  The motion to compel is denied with respect to Requests 13-15.

>  Request 16:  "Any and all names of any psychologist or psychiatrist that took part in any role of the designing of Northern Level 5 Supermax facility."
>
>  Request 17:  "Any and all notes, procedures, instructions memorandas, proposals, internal communications generated by said psychologist or psychiatrist and any state employee.  Pertaining to building and internal design ect of Northerns Level 5 Supermax facility."

In the last two requests, Reynolds seeks the names of and documentation generated by any psychologist or psychiatrist who participated in the design of Northern Correctional Institution.  Again, these reports are not relevant to the conditions Reynolds is experiencing now.  Further, any involvement of these persons would have occurred over twenty years ago and any

claims against them would be time-barred. The motion to compel is denied with respect to Requests 16 and 17.

In conclusion, Reynolds' motion to compel [**Doc. #30**] is **DENIED** in substantial part.

**SO ORDERED** this 9th day of February 2015, at Bridgeport, Connecticut.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge