UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD REYNOLDS,<br>      Plaintiff,<br><br>      v.<br><br>LEO ARNONE, et al.,<br>      Defendants. | No. 3:13-cv-1465 (SRU) |

### RULING ON DEFENDANTS' MOTION FOR STAY PENDING APPEAL

The Defendants, all former or present officials of the Connecticut Department of Correction ("DOC"), have moved for a stay of all further proceedings and a stay of the Permanent Injunction Order ("PIO") until the disposition of the pending appeal. *See* Mot. to Stay (Doc. No. 162). Specifically, the Defendants request a stay of "(1) all injunctive relief ordered regarding the plaintiff Richard Reynolds ['Reynolds']; (2) all injunctive relief ordered regarding the remaining inmates in Special Circumstances custody; and (3) any hearing in damages or further such proceedings until the appeals have been determined." Mem. in Supp. Mot. to Stay (Doc. No. 162-1) ("Defs' Mot."). For the reasons stated below, the Defendants' motion is **granted** in part and **denied** in part.

I.      **Background**

Reynolds, appearing *pro se*, filed this action challenging his conditions of confinement as a special circumstances high security inmate on or about October 4, 2013. *See* Doc. No 1. On June 29, 2015, I granted Reynolds' request for appointment of counsel. Doc. No. 52. The parties filed cross-motions for summary judgment on November 9, 2018. *See* Doc. Nos. 117, 119. On August 27, 2019, I granted Reynolds' motion for summary judgment, denied the Defendants' motion, and entered the PIO. *See* Doc. Nos. 155, 156. The PIO, among other

things, permanently enjoined the Defendants from placing Reynolds in special circumstances high security status and from enforcing Connecticut General Statutes Section 18-10b against any current or future inmate.  PIO at 1–2.

On August 30, 2019, the Defendants filed a motion for an immediate stay of the PIO.  *See* Doc. No. 157.  On September 4, 2019, I granted in part and denied in part the Defendants' motion, staying the PIO for an additional 30 days "to the extent that it enjoins the Defendants from enforcing Connecticut General Statutes Section 18-10b against any current or future inmate other than Reynolds."  Doc. No. 159 at 2.  In the instant motion, the Defendants move to stay the PIO until a decision is issued by the Second Circuit on appeal.  *See* Doc. No. 162.

## II.     Standard of Review

"To decide a discretionary motion to stay under Federal Rule 62(c), the Court must consider '(1) whether the stay applicant[s] [have] made a strong showing that [they] [are] likely to succeed on the merits; (2) whether the applicant[s] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Everspeed Enterprises Ltd. Pte. Ltd. v. Skaarup Fortune Shipping Ltd.*, 2010 WL 1541420, at *1 (S.D.N.Y. Apr. 15, 2010) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)).  Those factors are treated "somewhat like a sliding scale," and the "necessary level of success on the merits will vary according to the Court's assessment of the other factors."  *HC Trading Int'l Inc. v. Crossbow Cement, SA*, 2009 WL 4931341, at *1 (S.D.N.Y. Dec. 21, 2009) (citing *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).  "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the applicants] will suffer absent the stay.  Simply stated, more of one excuses less of the other."  *Mohammed v.*

*Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

**III.    Discussion**

    a.   Qualified Immunity

I believe that the only close question presented on appeal involves qualified immunity. A stay of that aspect of the ruling is unnecessary because no further proceedings to determine damages have been scheduled. Nonetheless, I will **grant** a stay of the proceedings to permit appeal of the summary judgment ruling regarding qualified immunity.

    b.   Permanent Injunction Order

        i.   Success on the Merits

In support of their motion, the Defendants argue that they are likely to succeed on the merits of their appeal of the PIO because I : (1) made factual determinations when there were material facts in dispute; (2) circumvented the Prison Litigation Reform Act ("PLRA"); and (3) erroneously decided novel questions of state law. *See* Defs' Mot. at 3.

The years-long and continuing violation of Reynolds' constitutional rights arising from his placement in solitary confinement as mandated by a bill of attainder passed by the legislature is literally stunning. Thankfully, bills of attainder increasing penal effects of past convictions of specifically identified inmates are rare in modern-day America.

The Defendants admit that the legislature "define[d] the severity of punishment for murder with special circumstances." Defs' Mot. at 11. That legislative decision was made decades after Reynolds committed and was convicted for his crime. That legislation, increasing the punishment for a crime after the fact and identifying the small class of prisoners subject to

3

the increased punishment is a classic bill of attainder.  I see very little chance that the Court of Appeals will reverse the PIO on those grounds.

Nor is the Defendants' linguistic attack on the PIO likely to succeed.  Whether confinement in a 12-foot by 7-foot cell for nearly 22 hours a day for over 23 years violates the Eighth Amendment will not turn on whether or not those conditions can be characterized as "solitary confinement."  It is the conditions that give rise to the claim, not the label.  That label, even if contested, does not amount to a genuine issue of material fact, nor did use of that term require me to find any facts.

The PIO did not order that the Defendants "reclassify and move the eight other special circumstances inmates who are at Northern CI." *Id.* at 14.  No other inmates are identified in the PIO.  The PIO did enjoin the Defendants from "enforcing Connecticut General Statutes Section 18-10b against any current or future inmate." PIO at 2.  The order is merely a natural consequence of holding the statute to be unconstitutional.  The Defendants apparently believe they are free to enforce an unconstitutional statute against any inmate who has not yet successfully sued them and received a judgment that Conn. Gen. Stat. § 18-10b is unconstitutional.  I doubt the Court of Appeals will agree with that idea, so I conclude that the Defendants' likelihood of success on the merits of that argument are quite slim.

Finally, the Defendants' hypertechnical reading of the PIO in order to create a parade of horribles suggests recalcitrance rather than a good faith inability to comply.  The order does not deprive the Commissioner of discretion, does not mean the Commissioner "can never deviate" from Reynolds' housing classification, does not prevent appropriate punishments of Reynolds, does not "in perpetuity" require contact visits that present a safety risk, does not mention or require work assignments for Reynolds, does not create a special status for Reynolds, does not

require the Commissioner to move any other prison to general population, and does not require any "significant changes in a correctional system." *See generally*, Decl. of Comm. Cooke (9/20/19) (Doc. No. 162-2).

To the contrary, the PIO requires the Commissioner to provide Reynolds with a "meaningful individualized classification determination" at least every six months, "using procedures that are the *same* or substantially similar to the procedure used for general population inmates." PIO at 2 (emphasis added). The order required that Reynolds *not* be treated specially, but like everyone else.

The idea that the PIO prevents reclassification of Reynolds is belied by its terms, which require frequent reclassification determinations. The idea that the PIO cannot be modified based on a change in circumstances (e.g., misconduct by Reynolds), or any other reason that justifies relief, betrays a lack of understanding of the Federal Rules. *See* Fed. R. Civ. P. 60(b)(6). The parade of horribles on which the Defendants' argument depends need never get started. The order was not overreaching, even if the Defendants hope to portray it as such.

The first factor weighs against a stay.

    ii. Irreparable Harm

Regarding the second and third factors, the Defendants contend that DOC officials and the families of victims will be irreparably injured in the absence of a stay. *See* Defs' Mot. at 15–18. As noted above, the PIO does not deprive the Commissioner of the discretion to determine Reynolds' appropriate conditions of confinement. Instead the PIO mandates DOC officials to provide Reynolds with a "meaningful individualized classification determination" that is the same as general population inmates. *See* Doc. No. 159 at 2.

To the extent that the Defendants argue that the PIO should be stayed due to the impact on the victims' families, the underlying convictions of special circumstances inmates are not at issue.[1] In this case, Reynolds is challenging his current conditions of confinement. He is neither requesting to leave prison nor seeking to vacate his life sentence.

As set forth more fully in the summary judgment ruling, however, Reynolds will continue to suffer irreparable harm unless and until the PIO is implemented.

The second and third factors weigh against a stay.

      iii.   Public Interest

Finally, the Defendants argue that a stay is in the public interest. For that proposition, the Defendants cite the PLRA, which limits prisoners' requests for prospective relief and requires a court to give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1). The Defendants note that maintaining secure prison facilities is a compelling interest. *See* Defs' Mot. at 18–19. To ensure safety, the Defendants utilize a comprehensive inmate classification system where each inmate is assigned a score from 1 to 5 for seven categories, with 1 being the lowest score, and 5 being the highest score. *See* DOC Classification Manual (Doc. No. 121-24) at 3. With respect to Reynolds, the DOC assigned him a score "1" for "[e]scape [risk], "[d]iscipline," "[d]etainer," and "[v]iolence history." *See* Reynolds' Classification Review Sheet (Doc. No. 121-25) at 1. From the DOC's own scores, there is no reason to believe that Reynolds would adversely impact public safety if moved to a level 4 facility pending appeal.

The Defendants have failed to show how the public interest requires the issuance of a stay of the PIO.

---

[1] The Defendants have not cited any case law for the proposition that the families of crime victims will be "substantially injured" if Reynolds and other special circumstance inmates are afforded due process rights regarding their security classification based on their in-prison conduct.

**IV.    Conclusion**

The Defendants' request to stay a hearing in damages until the appeals process is completed is **granted**.  Based on the foregoing, I **deny** the Defendants' request for a stay in all other respects.  Reynolds succeeded on his constitutional challenge to his conditions of confinement and has demonstrated that his in-prison conduct does not warrant being subjected to the harshest conditions of confinement available within the DOC system.  There is no good reason to stay the order granting him injunctive relief.

Finally, the Defendants request that I waive any bond requirement in this case.  *See* Defs' Mot. at 1–2.  Because I will not require the posting of a bond in connection to the appeal, the Defendants' request is **denied** as moot.

So ordered.

Dated at Bridgeport, Connecticut, this 16th day of October 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge