## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD REYNOLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 3:13-cv-1465 (SRU) |
| v. | ) |
| | ) August 12, 2022 |
| LEO ARNONE, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## JOINT PRETRIAL MEMORANDUM

### I.     Trial Counsel

*Plaintiff's Counsel*

David N. Rosen
David Rosen & Associates, P.C.
400 Orange Street
New Haven, CT 06511
(203) 787-3513
(203) 789-1605 Fax
CT00196
drosen@davidrosenlaw.com

Tyler Finn
Susman Godfrey LLP
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
(212) 729-2016
(212) 336-8340 Fax
phv20328
tfinn@susmangodfrey.com

<u>Defendants' Counsel</u>

WILLIAM TONG
ATTORNEY GENERAL


By: <u>/s/ Terrence M. O'Neill</u>
Terrence M. O'Neill
Assistant Attorney General
Federal Bar #ct10835
110 Sherman Street
Hartford, CT 06105
Telephone: (860) 808-5450
Fax No.: (860) 808-5591
Email: terrence.oneill@ct.gov

BY<u>: /s/ Steven R. Strom</u>
Steven R. Strom
Assistant Attorney General
Federal Bar #ct01211
E-mail: steven.strom@ct.gov


BY: <u>                    </u>
James M. Belforti
Assistant Attorney General
Federal Bar No. ct30449
E-Mail: james.belforti@ct.gov

BY: <u>/s/ Janelle R. Medeiros</u>
Janelle R. Medeiros
Assistant Attorney General
Federal Bar #ct30514
E-Mail: Janelle.medeiros@ct.gov

By: <u>/s/ Carmel A. Motherway</u>
Carmel A. Motherway
Assistant Attorney General
Federal Bar #ct23175
Email: carmel.motherway@ct.gov

## II.     Jurisdiction

Plaintiff Richard Reynolds brings claims pursuant to 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution.  This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

## III.     Jury/Non-Jury

This is a jury trial.

## IV.     Length of Trial

The parties differ in their estimates of the length of trial.

Plaintiff estimates that trial can be completed in seven days, and that his case-in-chief will be completed in three days.

Defendants estimate that trial will take thirteen days. Defendants believe Plaintiff's case, including cross examination of Plaintiff's witnesses, will take significantly longer than three days. Defendants believe their case-in-chief will be completed in seven days. Jury selection is September 7, 2022 and the court has allowed time for trial until September 15, 2022.  Defendants maintain that this is an insufficient amount of time to try this case.

## V.     Further Proceedings

Plaintiff does not anticipate the necessity of further proceedings prior to trial, other than evidentiary rulings pertaining to the trial.

Defendants anticipate the necessity for further proceedings on pretrial motions, including but not limited to motions *in limine* and other motions raising questions of law which should be decided prior to trial, to include preservation of claims related to *inter alia*, qualified immunity. Plaintiff believes qualified immunity issues are for the Court after the jury's verdict.

## VI.  Nature of Case

### A.  Due Process

Plaintiff seeks money damages and declaratory relief against all Defendants for violation of his rights under the Due Process Clause of the Fourteenth Amendment.

Plaintiff alleges that Defendants deprived Plaintiff of his liberty—by placing him in conditions that constitute an atypical and significant hardship as compared to the ordinary incidents of prison life—without any meaningful review to determine whether those conditions were justified in his individual case.

Defendants deny any and all allegations of wrongdoing.  Defendants deny that Plaintiff, who was sentenced to death and therefore placed on death row, had any liberty interest in being anywhere else in the prison but on death row. To the extent there was any deprivation, it was well within the normal incidents of prison life for death row inmates. Further, to the extent there was any deprivation, it cannot in any way be compared to general population because Plaintiff was not eligible for classification to general population due to his sentence of death. Thereafter, Defendants were obligated to comply with Connecticut law and Connecticut statutes and plaintiff was properly classified as special circumstances.  Defendants maintain that at all relevant times, Plaintiff's conditions did not amount to atypical and significant deprivations. In addition, there is no good faith basis in fact to find that any of the Defendants had the requisite personal involvement in the many classification reviews that were conducted regarding the Plaintiff.  Additionally, Defendants maintain that they are entitled to qualified immunity.

### B.  Eighth Amendment

Plaintiff seeks money damages and declaratory relief against all Defendants for violation of his rights under the Eighth Amendment's prohibition of cruel and unusual punishment.  Plaintiff contends that Defendants' confinement of Plaintiff at

Northern Correctional Institute in conditions of prolonged isolated confinement deprived him of his right to live in humane conditions.

Defendants deny any and all allegations of wrongdoing. Defendants further deny that the conditions at Northern CI amount to "prolonged isolated confinement" or that Plaintiff in fact suffered any injury whatsoever from his conditions of confinement. To the contrary, Defendants maintain that Plaintiff was periodically reviewed and evaluated and found to be in good physical and mental health, and was not in any way deprived of humane conditions of confinement. Additionally, the Defendants maintain that they lack the requisite personal involvement because they did not personally participate in any deprivation of any of the Plaintiff's basic necessities of prison life. Additionally, Defendants maintain that they are entitled to qualified immunity.

C.   **Equal Protection**

Plaintiff seeks damages against Defendants Scott Semple, Edward Maldonado and Angel Quiros for violation of his rights under the Equal Protection Clause.

Plaintiff alleges that from April 2017 until August 2019, Defendants housed Plaintiff in prolonged isolated confinement at Northern at the same time that they housed similarly situated inmates—Eduardo Santiago and Terry Johnson—in general population at MacDougall-Walker Correctional Institution.

Defendants maintain that they were not in any way personally involved in any classification decision involving either the Plaintiff, nor Eduardo Santiago, nor Terry Johnson. Defendants assert that as with the Due Process and Eighth Amendment claims raised above, there has been an intervening change in the law in the Second Circuit.

Specifically, Defendants assert that in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability," and instead, "[t]he violation must be established against the

supervisory official directly." *Id.* at 618. Therefore, a government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation." *Id.* at 619. Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

The Plaintiff cannot do this with regard to any of his claims listed above, as the Defendants were not personally involved in either the Due Process, Eighth Amendment or Equal Protection claims, but rather are being sued solely because of their positions in the hierarchy of the DOC. However, they lack the requisite direct participation in any alleged constitutional violation. In addition, as to all three claims alleged, the Defendants are entitled to qualified immunity.

Plaintiff maintains that all Defendants were personally involved in the violations of his constitutional rights. *Tangreti* thus has no bearing on Plaintiff's claims because he does not rely on a theory of supervisory liability. Instead, he contends that Defendants authorized and implemented policies—namely the imposition of isolated confinement for all death row inmates without individualized review—that violated Plaintiff's constitutional rights. It is undisputed that Defendants Leo Arnone and Scott Semple "directed the activities of the DOC, including the policies and customs challenged by Mr. Reynolds." Dkt. 120 ¶¶ 2, 4, and that Defendants Angel Quiros and Edward Maldonado were "personally involved in the authorization and maintenance of policies within the DOC," *id.* ¶¶ 8, 11.

## VII. Trial by Magistrate Judge

The parties do not agree to a trial by a Magistrate Judge.

## VIII.  List of Witnesses

### _Plaintiff's Anticipated Witnesses_

Plaintiff expects to call some or all of the following witnesses. In addition, he may call other witnesses based on pretrial or trial developments.  Plaintiff reserves the right to call the defendants or identified defense witnesses as adverse witnesses and, separately, to introduce applicable portions of their sworn deposition testimony.

A.    Richard Reynolds

Garner Correctional Institution

50 Nunnawauk Rd, Newtown, CT 06470

Mr. Reynolds will offer testimony as to the conditions of his confinement at Northern Correctional Institute, the impact of those conditions on him, his conduct, including his relevant disciplinary history, and the failure of Defendants to provide him with any notice of a hearing or an opportunity to be heard about the necessity or appropriateness of those conditions.

B.    Daniel Webb

MacDougall-Walker Correctional Institution

1153 East Street S, Suffield, CT 06078

If called, Mr. Webb will offer testimony as to the conditions of his confinement at Northern Correctional Institute, his conduct, and his disciplinary history

C.    Eduardo Santiago

Mac-Dougal Walker Correctional Institution

1153 East Street S, Suffield, CT 06078

Mr. Santiago will offer testimony as to the conditions of his confinement at Northern Correctional Institute from 2004 to 2013, the conditions of his confinement at MacDougall-Walker from 2013 onwards, his disciplinary record while incarcerated, and the ways in which he is similarly situated to Mr. Reynolds.

D.      Terry Johnson

Cheshire Correctional Institution

900 Highland Ave, Cheshire, CT 06410

Mr. Johnson will offer testimony as to the conditions of his confinement at Northern Correctional Institute from 1995 to 2000, the conditions of his confinement at MacDougall-Walker from 2013 onwards, his disciplinary record while incarcerated, and the ways in which he is similarly situated to Mr. Reynolds.

E.      Martin Horn

PO Box 9

Canaan, NY 12029

Mr. Horn, former Commissioner of the New York City Department of Correction and Pennsylvania Secretary of Corrections, among other positions, will offer expert testimony, based on his expertise in the area of correctional standards and best practices for correctional facilities.

It is expected that Mr. Horn will express the following opinions: that there is no penological justification for prolonged isolated confinement, such as what Mr. Reynolds was subjected to, for inmates sentenced to death or life without the possibility of release; that individual classification of prisoners sentenced to death or life without the possibility of release is a workable alternative to permanent isolated confinement; that it is a best practice in the corrections profession to classify individual inmates objectively in order to determine conditions of confinement and to reevaluate those classifications over time; that there is consensus among the correctional practitioners that prolonged isolated confinement should be used only when no reasonable alternatives are available. Mr. Horn will also offer testimony about the experiences in other states of safely and effectively using individualized classification and incentive-based management for prisoners sentenced to death and life without the possibility of release.

F.    Ruth O'Herron

26 Evergreen Avenue

Bloomfield, NJ 07003

Ms. O'Herron will offer testimony based on her own observation as to the endemic noise in the One West Housing unit at Northern during the time period that Mr. Reynolds and other prisoners on special circumstances were confined there. She will testify to the level of noise when she was there, which it is anticipated that Mr. Reynolds, who was present at the time, will testify was endemic.

**Defendants' Objection**

Ms. O'Herron was, at the time,  a law student working on this case and cannot be a witness. Given her limited exposure to the unit, her testimony lacks a sufficient and proper foundation.  Her testimony is inadmissible opinion testimony and is based on hearsay. Her opinions are not relevant and her perceptions of the conditions are neither relevant nor admissible. Furthermore, her testimony would be speculative since she is a lay witness yet her proffered testimony would invariably touch on areas reserved for an expert witness.

G.    Elizabeth McLaughlin

Ms. McLaughlin will offer testimony based on her own observation as to the conditions in the One West Housing Unit at Northern, including the extreme temperatures endemic to the facility. She visited the facility when she was a paralegal working for the Federal Defender's office in Connecticut.

**Defendants' Objection**

Ms. McLaughlin was, at the time, a law student working on this case and cannot be a witness. Given her limited exposure to the unit, her testimony lacks a sufficient and proper foundation.  Her testimony is inadmissible opinion testimony and is based on hearsay. Her opinions are not relevant and her perceptions of the conditions are neither relevant nor admissible. Furthermore, her testimony would be

speculative since she is a lay witness yet her proffered testimony would invariably touch on areas reserved for an expert witness.

H.    Stuart Grassian

401 Beacon Street

Chestnut Hill, MA 02467

Dr. Grassian, a board-certified psychiatrist with extensive experience in evaluating the psychiatric effects of prolonged solitary confinement in prison, will offer expert testimony on the risk that such conditions present to the health of prisoners.

It is expected that Dr. Grassian will offer the following opinions:  that prolonged restriction of environmental and social stimulation has a deleterious effect on mental functioning, that there is general consensus that such harms exists, that the conditions in which Plaintiff was held presented these very risks.

**Defendants' Objection**

Defendants anticipate bringing a *Daubert* motion against Dr. Grassian.

***Defendants' Anticipated Witnesses***

Defendants intend to call the following witnesses, while reserving the right to call anyone on Plaintiff's witness list and any witnesses in rebuttal:

1.    Leo Arnone

Mr. Arnone is a Defendant in this case.

2.    Scott Semple

Mr. Semple is a Defendant in this case.

3.    Edward Maldonado

Mr. Maldonado is a Defendant in this case.

4.      Angel Quiros

Mr. Quiros is a Defendant in this case.

5.      Dr. Mark Frayne

Dr. Frayne is a psychologist who worked at Northern CI during the relevant time period. He will testify about the medical and mental health care available to inmates confined at Northern, such as Plaintiff. Dr. Frayne will also testify about Plaintiff's mental health during the relevant time period.

**Plaintiff's Objection**

Plaintiff objects to Dr. Frayne's testimony as irrelevant and prejudicial. Plaintiff does not claim that he became mentally ill as a result of the conditions of his confinement. Moreover, Dr. Frayne has never evaluated plaintiff and therefore lacks the factual basis to opine on Plaintiff's mental health.

6.      Dr. Gerald Gagne

Dr. Gagne is a medical doctor and board-certified psychiatrist who worked at Northern CI during the relevant time period. He will testify about the medical and mental health care available to inmates confined at Northern, such as Plaintiff. Dr. Gagne will also testify about Plaintiff's mental health during the relevant time period.

**Plaintiff's Objection**

Plaintiff objects to Dr. Gagne's testimony as irrelevant and prejudicial. Plaintiff does not claim that he became mentally ill as a result of the conditions of his confinement. Moreover, Dr. Gagne has never met Plaintiff and therefore lacks the factual basis to opine on Plaintiff's mental health.

7.      Dr. Gregory Saathoff

Dr. Saathoff is a medical doctor and board-certified psychiatrist who will offer expert testimony about the conditions at Northern. Dr. Saathoff is expected to offer

opinions consistent with his expert report, including that the conditions of confinement at Northern did not constitute "solitary confinement," that Plaintiff was mentally stable, and that Plaintiff did not exhibit any mental deterioration as a result of his confinement.

**Plaintiff's Objection**

Plaintiff objects to Dr. Saathoff's expert testimony because he does not meet the requirements of Rule 702. Dr. Saathoff's medical experience does not provide him with any specialized knowledge about conditions of confinement. Whether the conditions qualified as "solitary confinement" as Dr. Saathoff defines the term is not relevant to the claims at issue and would only confuse the jury. Dr. Saathoff cannot opine on Plaintiff's mental health because he has never met him.

8.      Richard Reynolds

Mr. Reynolds is the Plaintiff in this case.

**Plaintiff's Objection**

Plaintiff objects to calling Mr. Reynolds as an adverse witness to the extent the examination goes into inadmissible areas, such as the details of his offense. Plaintiff requests that Defendants make an offer of proof concerning their proposed examination of Mr. Reynolds.

9. Gregorio Robles

Mr. Robles was the Unit Manager of the 1 West and 1 East housing units at Northern CI at the relevant time frame. He will testify as to the conditions of confinement at Northern during the relevant timeframe.

In addition to the four named Defendants, the Defendants identify Mssrs. Robles, Jackson, Barton, Cameron, Snyder, Maloney, and Mulligan as witnesses to the conditions of confinement. Plaintiff objects to Defendants' plan to call numerous witnesses in addition to the Defendants to testify to the conditions of confinement as cumulative and prejudicial.

10. Brian Jackson

Mr., Jackson was an administrative captain at Northern during the relevant time period. He will testify as to the conditions of confinement at Northern during the relevant timeframe.

**Plaintiff's Objection**

Plaintiff objects to Mr. Jackson's testimony because Defendants did not previously disclose him as a potential witness, and he has not been made available for deposition. Additionally, see objection to Robles above.

11. Michelle Deveau

Ms. Deveau is a Records Specialist for the Department of Correction. She will testify as to Plaintiff's sentence to death and resentencing after the repeal of the death penalty.

**Plaintiff's Objection**

Plaintiff objects to Ms. Deveau's testimony as cumulative and unnecessary. Plaintiff will stipulate to his original sentence and to his resentencing after the repeal of the death penalty. Live testimony on this undisputed subject will waste the jury's time.

12. James Barton

Mr. Barton was a correctional maintenance supervisor employed by the DOC. He will testify as to the physical layout of Northern CI as well as the conditions within Northern, specifically the temperatures within the building and cells. Additionally, see objection to Robles above.

13. Andrew Cameron

Mr. Cameron was a recreation supervisor who worked at Northern CI during the relevant timeframe. He will testify about the recreation and exercise opportunities provided to inmates at Northern including Plaintiff. See objection to Robles above.

14. David Snyder or his designee

Mr. Snyder is the current Director of Offender Classification and Population Management at the Department of Correction. He will testify about DOC classification procedures and records.

**Plaintiff's Objection**

Plaintiff objects to Mr. Snyder's testimony as cumulative and unnecessary. The Department of Correction's classification procedures are undisputed and laid out in the Classification Manual. Plaintiff will stipulate to the contents of that manual. Live testimony on this undisputed subject will waste the jury's time.

15. David Maiga or his designee

Mr. Maiga is the former Director of Offender Classification and Population Management at the Department of Correction. He will testify about DOC classification procedures and records. He will also testify specifically about Plaintiff's classification during the relevant time frame.

**Plaintiff's Objection**

Plaintiff objects to Mr. Maiga's testimony as cumulative and unnecessary. The Department of Correction's classification procedures are undisputed and laid out in the Classification Manual. So are Plaintiff's classification reviews. Plaintiff will stipulate to the contents of that manual and to his classification scores. Live testimony on these undisputed subjects will waste the jury's time.

17. Michael Maloney

Mr. Maloney was an Electronic Technician employed by the DOC. He will testify as to noise levels within Northern CI. See objection to Robles above.

18. William Mulligan

Mr. Mulligan is currently the Deputy Commissioner of the DOC. He was formerly the Deputy Warden at Northern CI during the relevant timeframe and will testify as to the conditions of confinement at Northern during this time frame.

See objection to Robles above.

## IX.    Deposition Testimony

Plaintiff does not anticipate designating any deposition testimony for their case-in-chief. Plaintiff reserves the right to designate deposition testimony for purposes of impeachment.

## X.    Exhibits

### *Exhibits that Plaintiff Expects to Offer at Trial*

1. Pictures of Northern Correctional Institute
   - **Reserve objection**. Plaintiff has not adequately defined which "pictures" he wishes to use. Defendants have no objection to the photographs of plaintiff's cell that were submitted in connection with their motion for summary judgment. (See Doc. #117-6)
2. Replica of Mr. Reynolds's cell, to be constructed.
   - **Objection** as to full exhibit. Need to discuss use as demonstrative exhibit.
3. Memo dated May 24, 2010 from Warden Quiros to all Staff re: Death Row Restraints (Dkt. 121-22).
4. Expert Report and CV of Martin F. Horn (Dkt. 121-19)
   - **Objection**. Inadmissible hearsay, also cumulative given his anticipated in person testimony.
5. Memo dated April 30, 2010 from Deputy Commissioner Mark Strange re: Death Row Review (Dkt. 121-33)
6. Connecticut Department of Corrections Classification Manual (Dkt. 121-24)

*Plaintiff reserves the right to offer only portions of Exhibits 7-14 based on relevancy and cumulativeness*

7. Classification Documents of Richard Reynolds (Dkt. 121-25)
8. Classification Documents of Terry Johnson (Dkt. 121-26)
9. Northern Inmate Handbook (Dkt. 121-6)
10. Administrative Directive 9.2 (Dkt. 121-20)
11. Revision to Administrative Directive 9.2 (Dkt. 121-21)
12. Administrative Directive 9.4 (Dkt. 121-22)
13. Administrative Directive 9.4 Attachment B (Dkt. 121-23)
14. Defendants' documents regarding Richard Reynolds, including a) relevant portions of his inmate file - Exhibit 9 to Deposition of Richard Reynolds
    - **Reserve objection** as to relevance and completeness; reserve right to supplement any and all documents including plaintiff's mittimuses, and disciplinary reports, and classification records

15. Affidavit of Eduardo Santiago (Dkt. 121-3)
    - **Objection**- Hearsay.
16. Affidavit of Terry Johnson (Dkt. 121-4)
    - **Objection**- Hearsay and cumulative in light of his anticipated in court testimony.


## *Exhibits that Plaintiff May Offer at Trial If Need Arises*

1. Excerpts from report of Gregory Saathoff relating to the assessment of Mr. Reynolds by Defendants' employees. (Dkt. 117-10 at 48-50).
    - Objection Hearsay. Dr. Saathoff will testify in person.
2. Affidavit of Elizabeth McLaughlin (Dkt. 121-5).
    - Objection- Hearsay, see also objections from paragraph VIII G.
3. Excerpts from Plaintiff's diary (to be used only to refresh recollection).
    - Objection hearsay; moreover, never disclosed in discovery and self-serving hearsay and opinions.
4. Event timeline
5. Prison clothing
6. NCCHC Statement on Solitary Confinement (Isolation) and sources cited therein, (Exhibit 6 to the deposition of Gregory Saathoff, August 14, 2018)
7. APHA Policy Statement, Solitary Confinement as a Public Health Issue (2013) and sources cited therein (Exhibit 7 to the deposition of Gregory Saathoff, August 14, 2018)
8. May 2015, United Nations standard minimum rules for the treatment of prisoners (the Mandela Rules)
9. Sources cited in the expert report of Martin Horn
10. Sources cited in the expert report of Stuart Grassian, MD


## *Exhibits that Defendants Expect to Offer at Trial*

1. Plaintiff's Master File
    - Objection to the extent the file includes documents that are irrelevant, prejudicial, or cumulative. See, without limitation, objection to proposed Exhibit 4.
2. Plaintiff's Medical Records
    - Objection to the extent the file includes documents that are irrelevant, prejudicial, or cumulative. See, without limitation, object to proposed Exhibit 4.

3. Plaintiff's Classification File

- Objection to the extent the file includes documents that are irrelevant, prejudicial, or cumulative. See, without limitation, object to proposed Exhibit 4.

4. Plaintiff's Pre Sentence Investigation (PSI)

- Objection. Plaintiff's pre-sentence investigation file—and the facts of his underlying crime—bear no relevance to the claims at issue. This document is inadmissible under Rules 401 and 403.

5. Plaintiff's Disciplinary History

- Objection. Other than the time period from 1999-2019, Plaintiff's disciplinary history is inadmissible because it bears no relevance to Defendants' decision to confine him in conditions of prolonged isolation. 1999 is ten years prior to the liability period. Discipline more remote than that is irrelevant potentially prejudicial and will waste time

6. Plaintiff's Property Matrix

- Reserve objection pending view of the exhibit

7. Plaintiff's Property Inventory upon leaving Northern

- Reserve objection pending view of the exhibit

8. Plaintiff's Commissary Purchases and Returns

- Reserve objection pending view of the exhibit

9. Photos of Northern CI

- Reserve objection pending view of the photos.

10. Plaintiff's Visitation Record

- Reserve objection pending view of the exhibit

11. Historical Summary of Key Events at Northern CI

- Reserve objection. Defendants have not adequately defined what "historical summary" they refer to, who wrote this summary, and on what basis it was compiled.

12. Various Administrative Directives as Needed

- Objection. Defendants need to specify which administrative directives they intend to admit in their case-in-chief.

13. Demonstrative Exhibit Timeline

- Reserve objection pending review of the proposed exhibit.

## XI.  Anticipated Evidentiary Problems

1. The time periods for which Plaintiff may seek damages on each cause of action.

- Plaintiff maintains that the continuing nature of the asserted violations permits him to seek damages dating back to July 2009, the first date in which a Defendant became personally involved.

- Defendants argue that Plaintiff wrongfully asserts claims prior to the statute of limitations. The complaint was filed 10/4/2013, so no claims may be raised for events prior to 10/4/2010.

2. Exclusion of details of Plaintiff's crime of conviction or references to the loss suffered by the victim or his family or community.

- Plaintiff maintains that any facts beyond the statute of conviction and the length of his sentence are irrelevant to the claims at issue, and highly prejudicial. Plaintiff will therefore move to exclude his pre-sentence investigation file.

- Defendants maintain that the Plaintiff's crime and criminal conviction are highly relevant to his classification and due process claims. Further, Defendants assert that the nature of Plaintiff's criminal trial, particularly the penalty portion, are highly relevant to his due process claim, especially when one considers the essential prejudice analysis that must be conducted. Further, the question of whether Plaintiff's conditions of confinement were "cruel and unusual" can only be assessed in light of the nature of his offense.

3. Exclusion of Plaintiff's discipline record, beyond the period for which he seeks damages and the decade prior (1999-2019).

- Defendants maintain that Plaintiff's disciplinary record is highly relevant to both his due process claim, the prejudice analysis thereof, and his Eighth Amendment claim.

4. Exclusion of opinion of Gregory Saathoff or others about whether conditions of Northern constitute "solitary confinement."

- Defendants maintain this is an essential factual issue for the jury to determine. The Second Circuit Court of Appeals specifically sent this case back for trial to determine whether or not Dr. Saathoff's opinions as to solitary confinement are credible.

5. Exclusion of opinion of Gregory Saathoff or others about Plaintiff's psychological condition.

- See #4, supra.

6. Preclusion of argument that the conditions of Plaintiff's confinement at Northern formed part of the punishment for his crime of conviction. While he was on death row, he was sentenced to death. The conditions in which he was held were not part of his sentence and therefore not properly part of his punishment.

- Defendants maintain that they cannot properly defend themselves or receive a fair trial if they cannot argue that Plaintiff's conditions of confinement were related to, *inter alia*, the recognized penological justification of retribution. This is particularly relevant in this case, where the Plaintiff was classified and housed on death row because of his conviction and the nature of his crime. Further, Plaintiff's conditions of confinement were imposed as punishment as a matter of law after the death penalty was repealed.

7. Exclusion of reference to or photo of the book "Clockers."

8. Exclusion of testimony of the mental health services offered at Northern as irrelevant as Plaintiff's do not bring any claims for deprivation of mental health services.

9. Exclusion of testimony as to classification procedures as cumulative and wasteful of the jury's time.

10. Exclusion of testimony as to Plaintiff's sentencing and resentencing as anything other than the sentences themselves is irrelevant and a waste of time.

11. Exclusion of testimony of six defense witnesses on conditions of confinement as needlessly cumulative.

12. Preclusion of Plaintiff's proposed model of the cell at Northern as either a full exhibit or a demonstrative.

13. The inadmissibility of hearsay affidavits or expert reports proffered by Plaintiff.

14. Defendants' objections to Plaintiff's proffered witnesses McLaughlin and O'Herron.


## XII. Stipulations of Fact and Law

1. Leo Arnone was Commissioner of the Connecticut Department of Correction ("DOC") from 2010 to 2013.

2. At all relevant times he acted under color of state law.

3. Scott Semple was the Commissioner of the DOC from 2014 to 2018.

4. At all relevant times he acted under color of state law.

5. Angel Quiros was the Warden of Northern Correctional Institute ("Northern") from 2009 until 2011.

6. Angel Quiros was a District Administrator for the DOC from 2011 to 2019.

7. At all relevant times he acted under color of state law.

8. Edward Maldonado was the warden of Northern from 2011 to January 1, 2013.

9. At all relevant times he acted under color of state law.

10. Plaintiff Richard Reynolds entered DOC custody on December 21, 1992.

11. Defendants transferred Mr. Reynolds to Northern on March 30, 1995, and he lived there until March 2021.

12. Mr. Reynolds was convicted of one count of capital felony for the murder of a police officer in violation of General Statutes (Rev. to 1991) § 53a-54b (1) and one count of murder in violation of General Statutes § 53a-54a (a). *State v. Reynolds*, 264 Conn. 1, 15, 836 A.2d 224, 250 (2003).

13. Plaintiff was sentenced to death on April 13, 1995, and moved to death row on or about that date.

14. On April 24, 2017, Mr. Reynolds was resentenced to life without the possibility of release.

15. Northern was a level 5 maximum security prison facility.

16. From 1995 to 2021, inmates on Death Row and Special Circumstances High Security status were housed at Northern.

17. Inmates on Death Row and Special Circumstances status did not have cellmates.

18. Each cell that Mr. Reynolds occupied at Northern was approximately 12' x 7' in its greatest dimensions, with a triangular wall in one corner reducing those dimensions and has a metal door that was kept locked when the inmate was inside.

19. There is a window in each cell door. The window measures approximately 4" x 30". The window does not open.

20. There is a trap door located in the cell door. The trap door can be opened and closed from the outside only.

21. Each cell has a window to the outside. The window measures approximately 3.5" x 35". The window does not open.

22. The cell walls, ceilings, and floor, and the hallway tiers outside the cells, are concrete.

## XIII. Trial To Jury

### A.  Proposed Voir Dire Questions

*Plaintiff's Proposed Voir Dire Questions*

1. The plaintiff in this case, Richard Reynolds, is a prison inmate who was convicted of murder in 1992.  Until 2017, he was on death row until his sentence was changed to life imprisonment without any possibility of release. In this case he says the conditions he was held in on death row and for the shorter period after that were both cruel and unusual and harsher than necessary in his individual case, in violation of his constitutional rights. Who here feels that since Mr. Reynolds was convicted of this grave offense they might have difficulty deciding in his favor in a case about his prison conditions?

2. The defendants are or were employees of the State, and some were in high positions, including Warden, Deputy Commissioner, and Commissioner. Would the fact that the defendants were employed by the State in high positions make you tend to favor them, especially in a lawsuit brought by an inmate?

3. Are you or a member of your family employed or formerly employed by the State of Connecticut? If so, in what position and when?

4. Is it possible that that the employment by the State of Connecticut that you mentioned might have some impact on your judgment, one way or the other?

5. Do you know the Plaintiff, Defendants, attorneys, or any of the named witnesses in this case?

6. How many of you have friends or relatives who are employed in the corrections system, law enforcement, or by the courts? [Please tell us what that was.]

7. Have you or anyone in your family worked in law enforcement? If so, in what position and when.

8. Have you or anyone in your family served in the military? If so, in what position and when?

9. Is it possible that that the employment you mentioned might make it either harder or easier to decide the case in favor of the plaintiff or the State?

10. Have you ever received any law enforcement training or applied for a job in law enforcement?

11. Do any of you have any contact with law enforcement personnel in social, religious, professional, or business settings?

12. Tell us about that, and what if any impact that might have on how you see this case.

13. Does anyone here have any strong feelings about prisons or prison officials whether they be positive or negative?

14. Does anyone here have any strong feelings about the Connecticut Department of Correction whether they be positive or negative?

15. Have you, or to the best of your knowledge, has any person close to you ever filed a formal or informal complaint against a correctional employee? If so, please describe the circumstances surrounding the complaint and the outcome thereof.

16. Have you, or to the best of your knowledge, has any person close to you ever felt that your or their constitutional rights were violated by a police officer or a correctional official? If so, please explain the circumstances.

17. Does anyone here have any strong feelings about the Connecticut Attorney General's Office whether they be positive or negative?

18. Does anyone here know anything about this case which would prevent you from deciding this case based upon the evidence and the Court's instructions?

19. Have you ever been arrested? Held in jail? If so, do you feel that this fact would influence your ability to render an impartial verdict in this case?

20. Do you feel that the country's legal system unfairly favors law enforcement officers or correctional officers over others?

21. Do you feel that the State's prisons routinely subject prisoners to inhumane treatment or excessive punishment?

22. Have you or has any member of your family or anyone close to you ever been sued by the State of Connecticut or any other governmental agency?

23. Have you or has any member of your family or anyone close to you ever brought suit against the State of Connecticut or any other governmental agency?

24. Have any of you heard or read anything about the Department of Correction or its employees which would in any way interfere with your ability to be objective and impartial in this case?

25. How many people feel that there are too many lawsuits in America today? Why?

26. How many people feel that a lawsuit seeking money damages is wrong? Why?

27. Does anyone believe that monetary damages must be awarded to a plaintiff just because he or she has filed a lawsuit? Does anyone believe that monetary damages must be awarded to a plaintiff just because he claims he has been injured?

28. Does anyone believe that simply because we are having a trial in this case, the Defendants must have done something wrong?

29. Have you ever served on a jury before? If so, please identify the location and nature of the case or cases on which you served.

30. Did you ever participate in any fashion in a civil lawsuit—as a plaintiff, a defendant or a witness?  What were the details of the lawsuit?  How did you feel about the process?  Did you feel the monetary award, if any, was fair?

31. How many people think that once someone commits a crime, he should lose all of his civil rights? Why? Why not?

32. What do you think about prisoners who file lawsuits against correctional officials?

33. Do you believe that a prisoner should have equal access to the court system to address alleged constitutional rights violations by correctional officials?

34. Who feels that a person who has been convicted of a crime should NOT be allowed to bring a lawsuit against Department of Correction officials? Why?

35. Does anyone feel that a person who has been convicted of a crime should NOT be allowed to recover money against Department of Correction officials? Why?

36. Who thinks a person who has been convicted of a crime is less likely to tell the truth? Why? Why not?

37. All other things being equal, how many of you would tend to trust or believe the testimony of a corrections official over that of someone who is *not* involved in corrections? How about over that of someone who has been convicted of a crime?

38. Have you or anyone close to you ever been a party in a lawsuit? Was it civil? Were you the plaintiff or the defendant?

39. Would anyone here have a problem reaching a verdict for money damages to a plaintiff who has been convicted of a crime if the evidence supported his claim?

40. Would anyone have a problem reaching a verdict for money damages against a correction official if the evidence supported the verdict?

41. This case is about an alleged unconstitutional deprivation of liberty due to placement in isolated confinement for 20 years. Defendants deny that the conditions amounted to isolated confinement. Is there anyone who would have a problem reaching a verdict for money damages in favor of a plaintiff because he was placed in isolated confinement for 20 years?

42. Has anyone here or someone close to you ever been the victim of a crime? What was the nature of the crime? Can you set aside that experience as you consider the evidence in this case?

43. This case will involve testimony and evidence about death row in a maximum-security prison. Are you aware that Connecticut no longer has the death penalty? Do you have feelings about that? What are they?

44. Does anyone here have a moral, political, ethical, religious, or other objection to the death penalty? If so, why?

45. Does anyone here have a moral, political, ethical, religious, or other objection to life imprisonment without the possibility of release? If so, why?

46. Does anyone here have a moral, political, ethical, religious, or other objection to incarceration as a form of punishment? If so, why?

47. The Court will instruct you on the law which you are to apply to the facts as you find them. One of these instructions will be that the burden of proof on all material facts rests on the Plaintiff. Does anyone believe that they will have trouble accepting that instruction?

48. The Court will instruct you on the law which you are to apply to the facts as you find them. One of these instructions will be that in order for the Plaintiff to prevail in this case, he must prove that the Defendants acted with more than mere negligence. Does anyone believe that they will have trouble accepting that instruction?

49. It is important that we do not miss anything. Has anything come up for any of you during the course of questioning that you have not had a chance to tell us about, perhaps concerning a topic or question that we went over too quickly?

50. Given all that we have discussed, does anyone feel that they need to add something to or qualify any of the answers you gave earlier?

51. Have any of you had any experiences or do any of you hold any opinions that you feel that either side should know about?

52. How many of you feel that one side starts out a little ahead of the other in your mind right now?

53. If you were sitting at either of these tables, would any of you feel that there would be any reason why you would not want yourself as a juror in this case?

54. It is important that you receive all your information about this case right here in the courtroom. It can be tempting to look on the internet to find things out about Mr. Reynolds, the Department of Corrections, other witnesses, or other things relevant to this case. If you are chosen as a juror it will be your sworn duty to resist that temptation and also to be sure that no one tells you about the case or any of the participants. Do you think you will be able to stay away from any information about Mr. Reynolds, the Department of Corrections or the death penalty in Connecticut? Can you swear that if chosen as a juror you will not seek out, look at, or listen to anything about Mr. Reynolds, other witnesses, or this case except what you see and hear in this Courtroom.

B. **Proposed Jury Instructions**

Plaintiff and Defendants both object to the opposing parties' proposed jury instructions. In order to keep the record clear, both parties have submitted their own proposed jury instructions as separate attachments to this memorandum.

C. **Proposed Verdict Form**

1. Did Plaintiff prove by a preponderance of evidence that Defendant Leo Arnone violated Plaintiff's right to due process of law?

2. Did Plaintiff prove by a preponderance of evidence that Defendant Scott Semple violated Plaintiff's right to due process of law?

3. Did Plaintiff prove by a preponderance of evidence that Defendant Edward Maldonado violated Plaintiff's right to due process of law?

4. Did Plaintiff prove by a preponderance of evidence that Defendant Angel Quiros violated Plaintiff's right to due process of law?

   *If the Answer to questions 1 through 4 is "No," proceed to question 8. If the Answer to any of these questions is "Yes," proceed to question 5.*

5. Do you find that Plaintiff is entitled to compensatory damages for a violation of Plaintiff's right to due process of law?

   *If the answer to question 5 is "No," proceed to question 6. If the answer is "Yes," in what amount against:*

   - Edward Maldonado _____
   - Angel Quiros _____
   - Scott Semple _____
   - Leo Arnone _____

6. Do you find that Plaintiff is entitled to punitive damages for a violation of his right to due process?

7. If the answer to question 6 is "No," proceed to question 8. If the answer is "Yes," in what amount against :

- Edward Maldonado _____
- Angel Quiros _____
- Scott Semple _____
- Leo Arnone _____

8. Did Plaintiff prove by a preponderance of evidence that Defendant Leo Arnone subjected him to cruel and unusual punishment in violation of the Eighth Amendment?

9. Did Plaintiff prove by a preponderance of evidence that Defendant Scott Semple subjected him to cruel and unusual punishment in violation of the Eighth Amendment?

10. Did Plaintiff prove by a preponderance of evidence that Defendant Edward Maldonado subjected him to cruel and unusual punishment in violation of the Eighth Amendment?

11. Did Plaintiff prove by a preponderance of evidence that Defendant Angel Quiros subjected him to cruel and unusual punishment in violation of the Eighth Amendment?

*If the Answer to questions 8 through 11 is "No," proceed to question 16. If the Answer to any of these questions is "Yes," proceed to question 12.*

12. Do you find that Plaintiff is entitled to compensatory damages for a violation of his Eighth Amendment right?

13. If the answer to question 12 is "No," proceed to question 14. If the answer is "Yes," in what amount against:

- Edward Maldonado _____
- Angel Quiros _____
- Scott Semple _____
- Leo Arnone _____

14. Do you find that Plaintiff is entitled to punitive damages for a violation of his Eighth Amendment rights?

15. If the answer to question 15 is "No," proceed to question 17. If the answer is "Yes," in what amount against :

- Edward Maldonado _____
- Angel Quiros _____
- Scott Semple _____
- Leo Arnone _____

16. Do you find that Plaintiff is entitled to compensatory damages for a violation of his right to equal protection of the law?

17. If the answer to question 17 is "No," proceed to question 19. If the answer is "Yes," in what amount against :

- Edward Maldonado _____
- Angel Quiros _____
- Scott Semple _____
- Leo Arnone _____

18. Do you find that Plaintiff is entitled to punitive damages for a violation of his right to equal protection of the law?

19. If the answer to question 19 is "No," proceed to the end of this form.  If the answer is "Yes," in what amount against :

- Edward Maldonado _____
- Angel Quiros _____
- Scott Semple _____
- Leo Arnone _____

D.    **Proposed Case Statement**

Richard Reynolds, the Plaintiff in this case, is a prisoner in the custody of the Connecticut Department of Correction and has been since 1992.  For 26 years from 1995-2021, Plaintiff was housed at the Northern Correctional Institution. Plaintiff seeks damages for alleged constitutional violations that took place from 2009-2019.

In this lawsuit, Plaintiff alleges that the conditions imposed by Defendants Leo Arnone, Edward Maldonado, Angel Quiros, and Scott Semple—former and current officers of the Connecticut Department of Corrections—violated his constitutional rights.  First, Plaintiff alleges that his conditions of confinement constituted cruel and unusual punishment in violation of the Eighth Amendment. Second, Plaintiff alleges that a lack of meaningful[1] periodic review of his conditions of confinement violated the Due Process Clause of the Fourteenth Amendment. Third, Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by keeping Plaintiff in restrictive conditions at Northern when other

---

[1] Defendants object to the inclusion of the word "meaningful" because there are no cases from either the Supreme Court or the Second Circuit holding what process if any, including periodic reviews, is due to inmates who are on death row or special circumstances.   The inclusion of this term incorrectly conflates administrative segregation with death row/special circumstances, which are markedly different statuses.

similarly situated inmates were housed in general population. Plaintiff seeks damages against the Defendants as compensation for the violation of his constitutional rights.

The Defendants deny all of Plaintiff's claims and maintain that they did not violate his constitutional rights while properly executing Plaintiff's sentence and adhering to the laws of the State of Connecticut.

Dated: August 12, 2022

/s/ *Tyler Finn*
Tyler Finn
Susman Godfrey LLP
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
(212) 729-2016
(212) 336-8340 Fax
phv20328
tfinn@susmangodfrey.com

David N. Rosen
David Rosen & Associates, P.C.
400 Orange Street
New Haven, CT 06511
(203) 787-3513
(203) 789-1605 Fax
CT00196
drosen@davidrosenlaw.com

*Counsel for Plaintiff Richard Reynolds*