UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD REYNOLDS,
    Plaintiff,

      v.

No. 3:13-cv-1465 (SRU)

LEO ARNONE et al.,
    Defendants.

## MEMORANDUM OF DECISION REGARDING RULINGS ON EXPERT TESTIMONY

On November 21, 2022 and December 1, 2022, I held a two-part pretrial conference on the record with David Rosen and Tyler Flinn, attorneys for the plaintiff Richard Reynolds; and Terrence O'Neill, Janelle Medeiros, James Belforti, and Carmel Motherway, attorneys for the defendants. During that conference, we discussed, *inter alia*, the plaintiff and defendants' respective motions *in limine* to preclude expert testimony. For the reasons discussed below and in court on the record at the pretrial conference, I **denied** the defendants' motion *in limine* to exclude testimony from Dr. Grassian and Mr. Horn, and I **granted** the plaintiff's motion *in limine* to limit the testimony of Dr. Saathoff.

## I.  STANDARD OF REVIEW

The Federal Rules of Evidence state that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." Fed. R. Evid. 702. Courts assume a gatekeeping function when determining whether to admit expert witness opinions. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 597 (1993). It is a "district court's responsibility to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Nimely v. City of New York*, 414 F.3d 381, 396 (2d

Cir. 2005) (quoting *Daubert*, 509 U.S. at 589); *Daubert*, 509 U.S. at 597 (stating that the District Court must confirm that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). The Court's gatekeeping function applies "whether a witness's area of expertise [is] technical, scientific, or more generally 'experience-based.'" *Nimely*, 414 F.3d at 396 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

In *Daubert*, the Court provided a set of factors for courts to consider when admitting scientific expert opinion, expressly noting that those factors are not intended to serve as "a definitive checklist or test." *Daubert*, 509 U.S. at 593. Those factors included "(1) whether a theory or technique can be (and has been tested); (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; (4) and whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community." *Amorgianos v. Nat'l Railroad Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593-94) (cleaned up).

A gatekeeping court must ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 137. A witness offering expert opinion must be an "expert on the material in question." *See Eagleston v. Guido*, 41 F.3d 865, 874 (2d Cir. 1994) (upholding the preclusion of expert testimony from a witness whose qualifications were not "pertinent to this case"); *see also Bourassa v. Black & Decker (U.S.) Inc.*, 2015 WL 4715250, at *3 (N.D.N.Y. Aug. 7, 2015) ("An expert, although generally qualified, may not be competent to render opinions under the circumstances of a particular case which are outside the expert's area of expertise."). While "the district court is the ultimate 'gatekeeper,'" the party offering the "expert testimony has the

burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal citations omitted).

## II.      DISCUSSION

As a preliminary matter, with respect to the plaintiff's Eighth Amendment claim, I clarified to the parties at the pretrial conference that the case that is to be proven by the plaintiff is whether the conditions of Reynolds' confinement violated the Eighth Amendment—not whether the conditions of Reynolds' confinement conform with the term "solitary confinement." The Second Circuit held that this Court "erred in granting summary judgment in favor of Reynolds as to his Eighth Amendment" claim because "material facts remain[ed] in dispute." *Reynolds v. Quiros*, 990 F.3d 286, 295 (2d Cir. 2021). Namely, the Second Circuit held that this Court erred in holding that Reynolds' confinement conditions, described then as solitary confinement, violated the Eighth Amendment as a matter of law even though the defendants disputed the severity of those conditions. *See id.*

Now, upon remand, the question before the jury is whether Reynolds' conditions of confinement were so severe that they constituted "cruel and unusual punishment." The jury's answer to the question before it will turn on its application of the facts to constitutional law, not on its application of the facts to the definition of "solitary confinement." Of course, that is not to say that the witnesses or the parties are barred from using the term "solitary confinement" at trial. It is only to say that evidence introduced by the parties is not necessarily relevant *solely* because it shows that Reynolds' confinement conditions fit or did not fit the definition of "solitary confinement." It is with this understanding that I proceed below.

A.  <u>The Portions of Plaintiff's Motion *in Limine*, Doc. No. 223, Concerning Expert Testimony</u>

In his motion *in limine*, Reynolds called upon this court to limit expert testimony from Dr. Saathoff, Dr. Frayne, and Dr. Gagne. In the time since Reynolds' submitted his motion *in limine*, the defendants have withdrawn Dr. Frayne and Dr. Gagne as expert witnesses and seek now only to introduce them as fact witnesses. Accordingly, I address only the plaintiff's motion to limit expert testimony from Dr. Saathoff. For the reasons set forth on the record at the pretrial conference and below, I **granted** the plaintiff's motion to limit Dr. Saathoff's testimony.

1.  *Dr. Gregory Saathoff*

The plaintiff filed a motion *in limine* to exclude the defendants' proposed expert witness Dr. Gregory Saathoff "from offering any opinion about 'solitary confinement,'" the "plaintiff's psychological condition," or the "plaintiff's health." Doc. No. 223-1 at 12-15 (cleaned up). Regarding Dr. Saathoff's testimony about "solitary confinement," the plaintiff advances several arguments for why his testimony on the matter should be excluded. First, the plaintiff argues that Dr. Saathoff's medical expertise does not qualify him to "assess prison conditions" and conclude that "the special circumstances unit at Northern did not represent a solitary confinement environment." Doc. No. 223-1 at 12 (cleaned up). Second, the plaintiff contends that Dr. Saathoff's opinion on the matter "lacks sufficient factual foundation." *Id* at 13. And, third, the plaintiff argues that Dr. Saathoff's opinion on the term "solitary confinement" will not "help the jury decide" the plaintiff's Eighth Amendment claim. *Id*. at 14.

The Supreme Court applies Rule 702 in *Daubert* to "require[] that the [expert] evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (cleaned up). This requirement means that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. (citation

omitted). The expert witness standard involves a "relaxation of the usual requirement of firsthand knowledge" that "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id*. at 592.

Dr. Saathoff has ample qualifications as an expert in psychiatry and correctional psychiatry. *See* Doc. No. 117-10 at 11-21. But his experiences in medicine and psychiatry do not qualify him to offer expert testimony on whether the conditions of Northern constitute "solitary confinement." Dr. Saathoff himself has acknowledged that the question of whether the conditions of Northern are solitary confinement is "not a medical question." *See* Doc. No. 132-2 at 70. What's more, as I explained in further detail above, the question before the jury is not whether the conditions constituted "solitary confinement" but whether the conditions violated the Eighth Amendment. Consequently, expert testimony from Dr. Saathoff regarding the former question would not be "relevant" or "helpful" to the trier of fact. *Daubert*, 509 U.S. at 591; *see* Fed. R. Evid. 702(a).

Thus, expert testimony from Dr. Saathoff about whether the conditions Mr. Reynolds experienced conformed with the term "solitary confinement" would be insufficiently reliable and irrelevant. *See Daubert*, 509 U.S. at 590-91. To that end, I grant the plaintiff's motion to exclude expert testimony from Dr. Saathoff regarding whether Reynolds' confinement conditions fit the definition of "solitary confinement." My ruling does not bar Dr. Saathoff from testifying about solitary confinement generally or from using the term "solitary confinement." Additionally, to the extent that Dr. Saathoff wishes in his testimony to compare the conditions he witnessed at Northern to the conditions he has examined at other facilities, he may still do so.

The plaintiff also seeks to preclude Dr. Saathoff from testifying about Reynolds' health. The plaintiff notes that "Dr. Saathoff has never spoken with the plaintiff, let alone evaluated

him," and the plaintiff has never "been evaluated psychologically during his incarceration." Doc.

No. 223-1 at 15. In his deposition, Dr. Saathoff relayed that to his knowledge, "there is no mental

health file on Mr. Reynolds." Doc. No. 132-2 at 5-6. The defendants are correct in their assertion

that "the fact that a physician has not examined the plaintiff does not necessitate a finding that

any such expert report or testimony offered by the physician is inadmissible." Doc. No. 234 at 21

(quoting *Rafferty v. Erhard*, 2012 WL 2577473, at \*7 (W.D.N.Y. July 3, 2012)). Indeed, in the

absence of an opportunity to conduct a direct examination, "[a]n expert may rely on data that she

did not personally collect" and she "need not have conducted her own tests." *Gussack Realty Co.*

*v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000); *see also Rafferty*, 2012 WL 2577473, at \*7

(proceeding to uphold the medical expert's testimony because it was "based upon his review of

over 30 test results and clinical reports relating to the plaintiff's various medical claims").

Dr. Saathoff, however, has no such data and no such tests upon which he can reasonably

rely. Mr. Reynolds has never undergone a psychological evaluation.[1] Dr. Saathoff himself

submits:

> While a review of records, direct visual observation of Mr. Reynolds unrestrained
> and in the company of other special circumstances inmates, and interviews with
> correctional and mental health staff are very helpful in providing an
> understanding of his current condition, they cannot replace a contemporaneous
> psychiatric assessment interview and psychological/neuropsychological testing.
> To ascertain his current level of functioning, objective testing as well as an
> interview opportunity for Mr. Reynolds to be assessed and to allow him to express
> his own concerns would provide important data that we do not currently have.

Doc. No. 117-10 at 56. The sources of information relied upon by Dr. Saathoff to opine on

Reynolds' health are plainly not the "reliable principles and methods" contemplated by Rule 702.

Fed. R. Evid. 702(c). Nor can they compare to the sources of medical data courts usually

---

[1] Whose fault it is that no such data exists also has no bearing on my evidentiary ruling. Even if Reynolds' decision
not to undergo a psychological examination was a deliberate one, I may not rely upon that singular factor to admit
expert opinion that is otherwise unreliable and inadmissible. *See* Doc. No. 234 at 21.

consider sufficient. *See, e.g.*, *Qube Films Ltd. v. Padell*, 2016 WL 888791, at *2 (S.D.N.Y. Mar. 1, 2016) (upholding expert medical testimony from witness who had conducted a "medical history interview," "consulted reports by other physicians treating" the person, "reviewed a . . . letter from" the person's physician, reviewed medical records, and "administered no fewer than twelve standard psychological tests"). By Dr. Saathoff's own admission, the methodology upon which he relies to opine on Reynolds "cannot replace" the "important data" obtained through testing and interviews. *See* Doc. No. 117-10 at 56. Moreover, the defendants did not seek to have Dr. Saathoff perform an independent medical examination of Reynolds pursuant to Federal Rule of Civil Procedure 35. Such an examination might have provided a basis for Dr. Saathoff's opinion, but without such an examination, that basis is missing. Because I must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," I must grant the plaintiff's motion to limit Dr. Saathoff from testifying about Reynolds' psychological state or health. *Kumho Tire Co*, 526 U.S. at 152.

I therefore grant the plaintiff's motion *in limine* to restrict Dr. Saathoff from offering expert opinion testimony concerning two principal topics: one, whether Reynolds' confinement conditions constituted "solitary confinement," and, two, Reynolds' medical or psychological state. In so ruling, I nevertheless permit Dr. Saathoff to offer expert testimony about other matters, so long as his testimony complies with the Federal Rules of Evidence and the standard set forth in *Daubert*.

B. <u>The Defendants' Motion *in Limine*, Doc. No. 226</u>

The defendants filed a motion *in limine* to exclude expert testimony from Dr. Stuart Grassian and Mr. Martin Horn. Doc. No. 226. At the pretrial conference, I **denied** the defendants' motion for the reasons set forth on the record and below.

1. *Dr. Stuart Grassian*

The defendant filed a motion *in limine* to exclude testimony from Dr. Staurt Grassian, an expert witnesses offered by the plaintiff to testify about the effect of "prolonged restriction of environmental and social stimulation" on "physical and mental functioning," as well as "the general consensus within the medical community" about the effects of "prolonged isolation." Doc. No. 233 at 5. In their motion, the defendants challenge the qualifications of Dr. Grassian, argue that Dr. Grassian's opinions were "pre-determined before he even became involved in this case," and claim his testimony would be unreliable because he did not visit Northern nor interview the plaintiff. *See* Doc. No. 226 at 4-6.

Dr. Grassian's experiences well qualify him as a medical expert who can testify about correctional psychiatry. *See* Doc. No. 233-2 at 23-26. In their motion *in limine*, the defendants challenge Dr. Grassian on the basis of a statement he made during his deposition, in which he admitted that in preparing his report on this case, he "cut and paste from other reports [he's] written." *See* Doc. No. 226 at 4. Dr. Grassian's expert report begins with a section on his qualifications and past experiences, then proceeds with a section on the "psychiatric effect of solitary confinement, generally," and includes a section summarizing "a growing body of research . . . condemning prolonged solitary confinement." Doc No. 233-2 at 2, 5, 12. The report only includes a brief discussion of Reynolds' conditions of confinement. *Id*. at 11-12. Given that Dr. Grassian's report mostly offers generalized scientific information about the effects of certain

8

conditions of confinement, it is not inappropriate that Dr. Grassian used the same language in this report that he has used in other reports prepared for other conditions of confinement cases. On the contrary, it would be unusual if Dr. Grassian's list of qualifications and summaries of scientific studies *varied* substantially among the reports he has authored. Thus, the fact that Dr. Grassian admitted to taking shortcuts in drafting his expert report does not, alone, render the methods underlying his research unreliable.

The defendants also seek to preclude Dr. Grassian's testimony because his knowledge of Northern's conditions is limited to secondhand information or to opinions based on assumed facts. *See* Doc. No. 249 at 37. Indeed, to opine on the conditions of Northern, Dr. Grassian intends not to rely on firsthand observations but on "pleadings, deposition testimony, Department of Correction administrative directives, as well as documents from Mr. Reynolds's Department of Correction files." Doc. No. 233 at 5-6. Notably, when he offers opinions based on these secondary sources, the plaintiff has submitted that Dr. Grassian will not be testifying that "Reynolds was or was not in solitary confinement." *See* Doc. No. 249 at 71-72.

An expert witness may rely on secondhand facts and data—expert witness testimony need not be based on firsthand observations. *Daubert*, 509 U.S. at 592 (stating that an expert can "offer opinions . . . that are not based on firsthand knowledge or observation"). Moreover, testimony about whether Mr. Reynolds' confinement conditions could plausibly cause a person emotional distress is undoubtedly relevant to the case at bar. If the defendants believe the secondhand information or assumptions Dr. Grassian relies upon to be insufficient, however, they may properly raise those objections through cross-examination—not through a challenge under *Daubert*. *See* Doc No. 249 at 37-38.

Dr. Grassian's experience sufficiently qualifies him to testify about the medical risks of prolonged isolation in general. Additionally, because Dr. Grassian need not base his testimony solely on his firsthand observations, the information sources about Reynolds' confinement conditions that he intends to rely on are sufficiently "reliable." *See* Fed. R. Evid. 702(b)-(c); *Daubert*, 509 U.S. at 592. Because Dr. Grassian's testimony is sufficiently tailored to his expertise, based upon reliable methods, and relevant, it fulfills the requirements of Rule 702. Accordingly, I deny the defendants' motion *in limine* to exclude his testimony.

2.   *Mr. Martin Horn*

The defendants have likewise submitted a motion *in limine* to preclude Mr. Martin Horn from testifying. Doc. No. 226. The plaintiff has offered Mr. Horn as an expert on "correctional best practices" and submits that Mr. Horn will not be testifying about the "effect [of the conditions of Northern] on Mr. Reynolds." Doc. No. 233 at 7; Doc. No. 249 at 43. Mr. Horn has substantial practical experience in corrections, particularly in developing correctional policies. *See* Doc. No. 121-19 at 1-3. Those practical experiences sufficiently qualify him as an expert witness who can testify about "correctional best practices."

The defendants argue that Mr. Horn's methods are unreliable because they are "not scientific," and they "cannot be replicated" or "peer reviewed." Doc. No. 226 at 6. Mr. Horn, however, is an experience-based expert, not a scientific expert, and his knowledge need not be based in the scientific method to nonetheless amount to reliable expert testimony. "[I]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *E.E.O.C. v. Beauty Enterprises, Inc.*, 361 F. Supp. 2d 11, 19 (D. Conn. 2005) (citing Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments). Thus, even if Mr. Horn's testimony "cannot be assessed" by the standards of scientific testimony, "his testimony is

10

nevertheless reliable in light of his extensive, specialized experience." *Id* at 19-20; *see also Kumho Tire Co.*, 526 U.S. at 151-54. I therefore **deny** the defendants' motion *in limine* to exclude Mr. Horn's expert testimony.

## III.     CONCLUSION

For the reasons discussed above and in court on the record at the pretrial conference, I **grant** the plaintiff's motion *in limine* to limit expert testimony from Dr. Saathoff, and I **deny** the defendants' motion *in limine* to exclude expert testimony from Dr. Grassian and Mr. Horn.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of December 2022.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge